## A00A1817. BUCKALEW v. THE STATE.
### (547 SE2d 355)

RUFFIN, Judge.

Steven M. Buckalew was convicted of two counts of boating under the influence. He was sentenced only on Count 2, boating under the influence per se.[1] In his appeal, Buckalew challenges the sufficiency of the evidence. He also claims that the trial court erroneously admitted evidence and made two charging errors. For reasons that follow, we affirm.

On appeal, Buckalew no longer enjoys a presumption of innocence, and the evidence must be viewed in a light most favorable to the verdict.[2] When so viewed, the evidence established that Michael Odom contacted the police after his 72-foot houseboat was rammed on Lake Lanier by a boat owned by Buckalew's brother, Dale. Just before the collision, Dale's boat had drifted into Odom's boat lines. Dale apologized and explained that he was having trouble maneuvering the boat, which was stuck in reverse. Odom suggested that Dale give Odom about 15 minutes to leave the area before moving the boat again. Dale apparently agreed and began waiting with his boat engine off.

At that point, Buckalew waded out from the beach yelling obscenities and climbed aboard his brother's boat. Dale told Buckalew not to start the engine because the transmission was stuck in reverse. Nevertheless, Buckalew started the boat, which moved in reverse at a "wide-open speed" and rammed Odom's houseboat. After the collision, Buckalew gave Odom his name and telephone number. Odom noticed that Buckalew smelled of alcohol, was acting irritated, and had "sporadic" speech.

Al Gramaldi, positioned nearby on another boat, testified that after the Buckalew boat first drifted into Odom's lines, the occupants turned the engine off. He then saw another man climb aboard. According to Gramaldi, a man and a woman told this person not to start the engine because it was stuck in reverse, but he did so any-

---

[1] In Count 1, the accusation charged Buckalew with "BOATING UNDER THE INFLUENCE OF ALCOHOL — LESS SAFE . . . to the extent that it was less safe for the person to operate, navigate, steer, drive, manipulate, or be in actual physical control of a moving vessel in violation of OCGA § 52-7-12 (a) (1)." Count 2 charged Buckalew with "BOATING UNDER THE INFLUENCE OF ALCOHOL — PER SE" under OCGA § 52-7-12 (a) (4).

[2] *Pollard v. State,* 230 Ga. App. 159 (495 SE2d 629) (1998).

way. Shortly after the impact, Odom took several photographs of Buckalew, including a picture of Buckalew at the wheel as the boat left the area in reverse. These photographs were entered in evidence. When the Buckalew boat departed, Odom contacted law enforcement officials, who met him at a nearby marina. A three-page handwritten statement drafted by Odom shortly after the collision was admitted into evidence without objection. Odom indicated in his written statement that the incident occurred at 6:45 p.m.

Department of Natural Resources ("DNR") law enforcement officers intercepted the Buckalew boat around 7:00 p.m. DNR Ranger Kenneth Carter and Sergeant James Bell testified that they observed Buckalew operating the vessel, then saw him switch places behind the steering wheel with another male as law enforcement officials closed in.

Buckalew told Ranger Carter that he had not been drinking alcohol. Carter testified, however, that Buckalew "showed a lot of manifestations of being under the influence" of alcohol. According to Carter, Buckalew appeared unsteady, his hand movements were very slow, his face was "flushed and slack," his speech was "[s]lurred," he was "loud and boisterous," his eyes were bloodshot, and he "smelled of alcohol — of an alcoholic beverage." Another officer, Ranger Dale Clayton, noted that Buckalew was "loud, belligerent . . . [r]eal argumentative" and "was using vulgar language, being abusive and uncooperative."

When Ranger Carter attempted to conduct field sobriety tests, Buckalew refused to cooperate. Buckalew was then arrested. After his arrest, Buckalew insisted on taking the field sobriety tests. Ranger Carter administered several tests, and Buckalew failed each one. Test results subsequently obtained by a certified examiner on the Intoxilyzer 5000 revealed that Buckalew had an alcohol concentration of 0.134 at 9:03 p.m. and 0.130 at 9:07 p.m.

1. Buckalew makes several sufficiency of the evidence arguments. None supports reversal.

(a) Buckalew contends that no direct evidence shows he operated, navigated, steered, or drove his brother's boat following the collision with Odom's houseboat. At trial, he denied operating the boat, claiming that his brother was in control. He also argues that the state did not present sufficient evidence that he was intoxicated at the time of the collision, requiring reversal.

We disagree. As an initial matter, we note that neither count charged Buckalew with being intoxicated at the time of the collision. Instead, Buckalew was charged with boating under the influence of alcohol to the extent that he was less safe and being in "actual physical control of a moving vessel while having an alcohol concentration of 0.10 grams or more at any time within three hours after such con-

trol from alcohol consumed before such control ended." Review of the transcript in a light most favorable to the jury's verdict reveals ample evidence from which any rational trier of fact could have found beyond a reasonable doubt that Buckalew was boating under the influence of alcohol, as alleged by the accusation.[3]

(b) Buckalew claims the state failed to prove that his blood alcohol level was tested within three hours of controlling the boat, as required by OCGA § 52-7-12 (a) (4). Construed favorably to the verdict, however, the evidence indicated that the collision with Odom's houseboat occurred around 6:45 p.m. Odom contacted the DNR shortly after the collision, and the police log places the time of Odom's call at 7:01 p.m. Officers dispatched to the area subsequently observed Buckalew operating the boat on the lake. The times appearing on Buckalew's Intoxilyzer 5000 test results are 9:03 p.m. and 9:07 p.m., well within three hours of each of these events.

(c) Finally, Buckalew argues that the state failed to prove that the offense occurred within state waters, since the federal government owns Lake Lanier. The Georgia Boat Safety Act defines " '[w]aters of this state' " as "any waters within the territorial limits of this state" except for "privately owned ponds or lakes not open to the public."[4] Lake Lanier lies within the boundaries of this state and is open to the public. The evidence does not suggest otherwise. Buckalew has cited — and we have found — no authority for his apparent claim that the Georgia Boat Safety Act does not apply on Lake Lanier.[5]

2. Buckalew contends that the trial court erred in admitting the written statement of Renee Cornell, his brother's girlfriend, who was on the boat with them. The trial court admitted Cornell's statement after concluding that she was "unavailable" to testify. It found that the state made "[d]iligent efforts . . . to subpoena [Cornell] and try to contact her," but was unsuccessful. Buckalew disagrees and questions the state's efforts. Even if Buckalew is correct that the statement should have been excluded as hearsay, he "has shown no harm in its admission."[6] In fact, the statement appears to *support* certain aspects of Buckalew's testimony.[7] As we have noted before, "[i]t is axi-

---

[3] *Gallimore v. State*, 242 Ga. App. 374, 375 (529 SE2d 668) (2000); *Eason v. State*, 234 Ga. App. 595, 597 (1) (507 SE2d 175) (1998); *Lucas v. State*, 234 Ga. App. 534, 536 (1) (507 SE2d 253) (1998); compare *Bowen v. State*, 235 Ga. App. 900, 902 (510 SE2d 873) (1999).

[4] OCGA § 52-7-3 (26).

[5] See *California Coastal Comm. v. Granite Rock Co.*, 480 U. S. 572, 580 (107 SC 1419, 94 LE2d 577) (1987) (noting that "the State is free to enforce its criminal and civil laws on federal land so long as those laws do not conflict with federal law") (punctuation omitted).

[6] *Green v. State*, 209 Ga. App. 274, 275 (2) (433 SE2d 383) (1993).

[7] On appeal, Buckalew claims harm in Cornell's statement that when he first boarded his brother's boat, he "went to the front . . . and put the engine in forward. It went backward and rammed into [Odom's houseboat]." Yet, even Buckalew admitted that he "put the

omatic that harm as well as error must be shown to authorize a reversal by this court."[8]

3. Buckalew also contends that the trial court erred in admitting portions of Ranger Carter's written report. The trial court admitted a redacted version of the report after finding that Carter's veracity had been called into question. The record shows that defense counsel used the report to establish that trial testimony given by Carter was incorrect. Defense counsel also cross-examined Ranger Carter about his presence in the courtroom throughout the trial, where, in defense counsel's words, he had "the benefit of listening to the other witnesses testify."

A witness's prior consistent out-of-court statement is admissible over a hearsay objection where "(1) the veracity of a witness's trial testimony has been placed in issue at trial; (2) the witness is present at trial; and (3) the witness is available for cross-examination."[9] A witness's "veracity" is placed in issue "if affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross-examination."[10]

We cannot conclude that the trial court erred in finding that Buckalew raised issues about Ranger Carter's veracity.[11] Furthermore, even if Buckalew's inquiries did not place Carter's veracity in question, admission of the report was not harmful. During his testimony, Ranger Carter used his report to refresh his recollection and testified about information contained in the report without objection. He further indicated that his trial testimony was consistent with his report. Under these circumstances, it does not appear that the report's admission contributed to the verdict.[12]

4. Buckalew also challenges one section of the trial court's boating under the influence charge. The challenged instruction tracked OCGA § 52-7-12 (a) (1) and (4), the two offenses with which Buckalew was charged. He complains, however, that the court should not have included the portions of the statute relating to manipulation of "moving water skis, moving aquaplane[s], moving surfboard[s], or similar moving device[s]," which have no bearing on this case.

---

gear in the forward position" when he first climbed aboard, after which "[t]he boat went backwards into Mr. Odom's boat." Buckalew also contends Cornell's statement that "[w]e went out into the cove and began trying to work on the engine" raised some implication that Buckalew was "operating the boat." One sentence after the quoted statement, however, Cornell indicated that "Dale was driving into an open area and Steve [Buckalew] was watching for the shore and other boats." Cornell's statement, therefore, bolsters Buckalew's argument that he was not operating the boat.

[8] (Punctuation omitted.) *Anderson v. State*, 183 Ga. App. 313 (3) (358 SE2d 888) (1987).

[9] *Woodard v. State*, 269 Ga. 317, 320 (2) (496 SE2d 896) (1998).

[10] Id.

[11] See *James v. State*, 270 Ga. 675, 676 (3) (513 SE2d 207) (1999).

[12] See *Astudillo v. State*, 244 Ga. App. 612, 613-614 (536 SE2d 271) (2000).

We have noted that

> [e]ven though not every phrase and portion of the Code section be applicable, it is generally held that a new trial will not be granted if the court gave in charge an entire statute or Code provision where a part thereof is applicable even though a part may be inapplicable under the facts in evidence.[13]

Furthermore, although a jury instruction can be misleading when it "gives several definitions of the offense where the accused is charged with only one of those definitions," no fatal error occurs if the jury receives subsequent instructions confining the offense to that charged in the accusation.[14]

Just after giving the challenged charge, the trial court focused the jury on "moving vessel[s]," rather than water skis or similar devices. The trial court also stated that the jury would not be authorized to find Buckalew guilty unless it determined that he committed the "offenses charged." In addition, throughout the charge, the trial court limited its instructions to "Boating Under the Influence" and stated at the beginning that Buckalew was charged with "Boating Under the Influence Less Safe and . . . Boating Under the Influence Per Se." The judge told the jury that it would have the accusation with it to refer to during deliberations, and the accusation unequivocally charged Buckalew with boating under the influence. The trial court further instructed that "[n]o person shall be convicted of any crime unless and until each element of the crime is proven beyond a reasonable doubt."

Reviewing the charge as a whole, we conclude that the challenged instruction was not likely to have misled or confused the jury.[15] No reversible error occurred.

5. Buckalew asserts that the trial court erred by refusing to give his requested charge on justification. He argues that he was entitled to the charge because he believed there was an emergency when he climbed aboard his brother's boat.

Among other requirements, a jury instruction must be adjusted to the evidence and embody a correct, applicable, and complete statement of law.[16] When a requested charge is confusing, inappropriate, or not authorized by the evidence, denial of the request is proper.[17]

---

[13] (Punctuation omitted.) *Bagley v. State*, 153 Ga. App. 777-778 (266 SE2d 804) (1980).

[14] *Brown v. State*, 243 Ga. App. 632, 634 (4) (534 SE2d 98) (2000).

[15] Id.; see also *Horner v. State*, 240 Ga. App. 1, 2 (1) (522 SE2d 483) (1999).

[16] *Register v. State*, 229 Ga. App. 648 (1) (494 SE2d 555) (1997).

[17] *Jones v. State*, 200 Ga. App. 519, 521 (2) (c) (408 SE2d 823) (1991).

An instruction on justification would not have been adjusted to the evidence in this case.[18] No "emergency situation" authorized Buckalew's actions.[19] The record shows that when Buckalew boarded his brother's boat, it was no longer tangled in Odom's boat lines. Although the boat may have been drifting, there was no evidence of any imminent danger to anyone's safety or property.[20] Buckalew cites no authority, and we know of none, that would authorize an intoxicated person to operate or attempt to operate a boat under the circumstances of this case. Since the requested instruction was not reasonably raised or authorized by the evidence, the trial court correctly refused to give it.[21]

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED MARCH 23, 2001 —
RECONSIDERATION DENIED APRIL 12, 2001 

*Ford & Josey, Michael C. Ford*, for appellant.
*Leslie C. Abernathy, Solicitor-General, Inez D. Grant, Assistant Solicitor-General*, for appellee.

---

[18] See OCGA § 16-3-20.
[19] Compare *Moore v. State*, 234 Ga. App. 332, 333 (1) (506 SE2d 685) (1998).
[20] See *Bowden v. State*, 270 Ga. 19, 21 (3) (504 SE2d 699) (1998).
[21] *Gill v. State*, 229 Ga. App. 462, 465 (4) (494 SE2d 259) (1997).