### A01A0915. DUREN v. THE STATE.
(555 SE2d 913)

BLACKBURN, Chief Judge.

Following a jury trial, Curtis M. Duren was convicted of driving under the influence of alcohol to the extent that he was less safe to drive and for violation of the open container law by being in possession of an open container of alcoholic beverage while operating a motor vehicle. On appeal, Duren argues, as his sole enumeration of error, that the evidence was insufficient to support his DUI convic-

tion because the State failed to present sufficient evidence that he was impaired.

> On appeal the evidence must be viewed in the light most favorable to support the verdict, and [Duren] no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Ryals v. State.*[1] See *Jackson v. Virginia.*[2]

So viewing the evidence, the facts show that on June 23, 2000, DeKalb County Police Officers Gary Thull and Jeffrey Rich were on patrol in a "high incident drug trafficking area." At approximately 1:30 a.m., the officers spotted Duren's vehicle, with a tag light out, driving east on Memorial Drive in DeKalb County. The officers stopped Duren for this tag light violation.

Officer Thull testified that as he talked to Duren, he detected a strong smell of an alcoholic beverage. Upon questioning, Duren admitted to having consumed alcohol, stating that he had consumed two beers prior to leaving work. Officer Thull was joined by Officer Rich, who also detected the smell of an alcoholic beverage coming from Duren. Officer Rich described Duren's eyes as "watery."

The officers continued the investigation, and Duren exited his vehicle. Officer Matthew Roe came upon the scene and stopped to assist the officers. Officer Roe also observed that Duren's eyes were bloodshot. Because the roadway was on a slope, the only field sobriety tests administered were the horizontal gaze nystagmus (HGN) test and the breath evaluation.

In conducting the HGN test, Officer Roe observed four out of six possible "clues" for nystagmus, or involuntary jerking of the eyes. Officers Thull and Roe testified that during the alco-sensor evaluation they felt that Duren was attempting to give a false reading, or to avoid giving a reading at all, by placing his tongue in front of the mouthpiece. After two or three attempts, Duren finally completed the alco-sensor test which indicated a positive reading for alcohol. At that point, Duren was arrested and read the implied consent warnings.

Duren twice refused to take the State-administered breathalyzer test. A post-arrest inventory of Duren's vehicle produced six bottles of

---

[1] *Ryals v. State*, 238 Ga. App. 578 (519 SE2d 505) (1999).
[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

beer, four full, one empty, and one half-empty. At the scene, the officers also discovered a beer bottle cap in Duren's shirt pocket.

OCGA § 40-6-391 (a) (1) prohibits a person from driving a motor vehicle while under the influence of alcohol to the extent that it is less safe for the person to drive. Under this Code section, "impaired driving ability is an element of the crime that the state must prove to obtain a conviction." *Kevinezz v. State.*[3] It is well settled that police officers may offer opinion evidence concerning a driver's impairment and whether he is less safe to drive. *Waits v. State.*[4] A police officer's evaluation may be based on a number of different factors:

> The results of field sobriety tests, in conjunction with other factors including the physical appearance of the driver, red or glassy eyes, an unsteady stance, the presence of the odor of alcohol, the existence of an accident, and any inculpatory statements made by the driver or witnesses, . . . may form an appropriate basis for an evaluation by an officer, and ultimately a jury, as to whether a driver was impaired by alcohol to the extent that it was less safe for him to drive.

*Hawkins v. State.*[5]

Here, Officers Thull, Rich, and Roe collectively testified to the following concerning Duren: (1) a strong odor of alcohol; (2) bloodshot or watery eyes; (3) an admission of drinking two beers; (4) possession of six bottles of beer in his vehicle, two of which were open; (5) four out of six clues on the HGN test; (6) a positive alco-sensor test (after an apparent attempt to evade the test); (7) a beer bottle cap in his pocket at the scene; and (8) refusal to take the State-administered breathalyzer test. Based upon their observations, Officers Thull and Roe testified to their opinion that Duren was impaired and, therefore, a less safe driver.

Duren argues that the evidence presented at trial was insufficient to show that he was impaired and therefore a less safe driver, but only that he consumed alcoholic beverages and was in possession of it at the time of his arrest. Duren points to the fact that the officers did not observe any act of impaired driving by him.

To establish a violation of OCGA § 40-6-391 (a) (1), "[n]o requirement exists that the person actually commit an unsafe act." *Waits,* supra at 358 (1). This argument is without merit. Moreover, no particular combination of factors or clues derived from a person's appearance or demeanor is required to establish a violation of OCGA

[3] *Kevinezz v. State*, 265 Ga. 78, 79 (2) (454 SE2d 441) (1995).
[4] *Waits v. State*, 232 Ga. App. 357, 358 (1) (501 SE2d 870) (1998).
[5] *Hawkins v. State*, 223 Ga. App. 34, 39 (1) (476 SE2d 803) (1996).

§ 40-6-391 (a) (1). Here, Duren smelled strongly of an alcoholic beverage, had watery or bloodshot eyes, failed the HGN test, and was positive for alcohol on the alco-sensor test.

We have found the HGN test to be a reliable indicator of impairment in the context of DUI. *Hawkins*, supra. In that regard, in *Sieveking v. State*[6] and *Werner v. State*,[7] we noted that testimony regarding the HGN is not limited to establishing the mere *presence* of alcohol, but can be offered to show level of impairment such that a driver is less safe within the meaning of OCGA § 40-6-391 (a) (1).

Officer Roe explained how he conducted the HGN evaluation, what he saw, and his final conclusion that Duren exhibited four of six "clues" of nystagmus impairment. Based upon the clues he observed during the administration of the HGN test, Officer Roe testified that Duren was under the influence of alcohol to the extent that he was a less safe driver. Officer Roe's testimony constitutes evidence from which the jury could determine that Duren was impaired by alcohol to the extent that he was a less safe driver. "That these tests have no specific, quantitative value regarding the extent of a driver's alcohol impairment would go to the weight to be given the tests and not their admissibility." (Punctuation omitted.) *Werner*, supra at 679 (1). Also, Duren twice refused to take a breathalyzer test. Duren's refusal to submit to the State breathalyzer test is circumstantial evidence of his intoxication. *Lucas v. State*.[8]

The cases upon which Duren relies do not support his position. Duren argues that our holdings in *Davis v. State*,[9] *Groom v. State*,[10] and *Clay v. State*[11] require reversal in the present case. However, these cases are distinguishable.

In *Davis*, the officer smelled the odor of alcohol in the defendant's car, but could not determine the source. In addition, the defendant denied drinking and rebutted any circumstantial evidence of intoxication with a negative blood alcohol test. *Davis*, supra at 649 (1). In *Groom*, there was no testimony that the defendant was under the influence of alcohol at any time, and no one observed him at the scene because he fled before the accident was discovered. *Groom*, supra at 400 (2). Finally, in *Clay*, the only evidence of intoxication was the odor of alcohol and red eyes. The defendant offered rebuttal witnesses who testified that he had not been drinking that morning and that his eyes were normally red. *Clay*, supra at 378. None of the

[6] *Sieveking v. State*, 220 Ga. App. 218, 219 (1) (469 SE2d 235) (1996).

[7] *Werner v. State*, 246 Ga. App. 677, 678 (1) (538 SE2d 168) (2000).

[8] *Lucas v. State*, 234 Ga. App. 534, 535 (1) (507 SE2d 253) (1998).

[9] *Davis v. State*, 206 Ga. App. 647 (426 SE2d 267) (1992).

[10] *Groom v. State*, 187 Ga. App. 398 (370 SE2d 643) (1988).

[11] *Clay v. State*, 193 Ga. App. 377 (387 SE2d 644) (1989).

cases cited by Duren involved evidence that the defendants had failed field sobriety tests.

The evidence was sufficient to authorize a jury to find Duren guilty of being under the influence of alcohol to the extent he was a less safe driver and that he was in possession of an open container of alcoholic beverage, under the standard set forth in *Jackson v. Virginia*, supra.

*Judgment affirmed. Pope, P. J., and Mikell, J., concur.*

DECIDED NOVEMBER 2, 2001 — 

*Head, Thomas, Webb & Willis, Robert R. Giannini*, for appellant.
*Gwendolyn R. Keyes, Solicitor-General, Heather C. Waters, Assistant Solicitor-General*, for appellee.