## A05A1303. BOWLING v. THE STATE.
(619 SE2d 688)

JOHNSON, Presiding Judge.

A jury found Daniel Bowling guilty of operating a boat while under the influence of alcohol to the extent it was less safe for him to do so.[1] He appeals from his conviction, claiming the evidence was insufficient to show that he was a less safe driver, or that he was less

---

[19] *Lyons v. State*, 269 Ga. App. 27, 31 (3) (602 SE2d 917) (2004).
[1] See *Buckalew v. State*, 249 Ga. App. 134 (547 SE2d 355) (2001); OCGA § 52-7-12 (a) (1).

safe as a result of being under the influence of alcohol. We disagree and affirm his conviction.

On appeal the evidence is viewed in a light most favorable to the verdict, and an appellant no longer enjoys a presumption of innocence; moreover, this Court determines evidence sufficiency and does not weigh the evidence or determine the credibility of witnesses.[2] The jury's verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[3]

Viewing the evidence in the proper light, it shows that an officer with the Georgia Department of Natural Resources was patrolling Lake Lanier when he observed a boat traveling at night without a stern light. The officer pulled alongside the vessel and told the driver, Bowling, that he was stopping the boat because of the light violation. The officer proceeded to conduct a safety inspection, and asked Bowling to produce a lifejacket for each person on board, a "throwable" lifesaving device, a fire extinguisher, and the boat's registration.[4] Bowling had difficulty trying to find some of the items, and was unable to produce the registration or a throwable lifesaving device. The officer testified that Bowling seemed confused while looking for the items. Bowling said he thought the registration card was in the glove compartment, but instead of looking there, he looked around the driver's seat for the card. The officer testified that Bowling asked to use the officer's flashlight, even though Bowling had just looked straight at the floor where there was a large spotlight. The officer noticed an empty wine glass on the floorboard of the boat, and detected an odor of alcohol coming from the boat. He asked Bowling if he had been drinking. Bowling said he had not.

Based on his observations, as well as Bowling's mannerisms and demeanor, the officer asked Bowling to perform field sobriety tests to determine if he was under the influence of alcohol.

With Bowling in his own boat and the officer in the patrol boat, the officer administered the horizontal gaze nystagmus (HGN) test, testing for involuntary jerking of the eyes. Bowling was unable to perform the test properly because he kept moving his head after being told not to do so. The officer testified that Bowling exhibited all six "clues" on the HGN test, though he did not explain for the jury what that meant in terms of intoxication.

The officer asked Bowling to step over into the patrol boat. He noted that Bowling stumbled badly when doing so. The officer noticed an odor of alcohol coming from Bowling's person. When the officer

---

[2] *Garrett v. State*, 230 Ga. App. 97 (1) (495 SE2d 579) (1998).

[3] Id.

[4] See OCGA § 52-7-8.

asked Bowling to recite the alphabet without singing, Bowling started reciting it, then stopped, started over, repeated letters, laughed and sang part of the test. He omitted several letters. Bowling was unable to do a finger dexterity exercise or a hand pat exercise as instructed. Bowling refused to submit to an alco-sensor test.

The officer placed Bowling under arrest for boating under the influence, and then read the implied consent notice. Bowling became hostile and demanded to be returned to his boat. Instead, the officer took Bowling to the police station. Once there, Bowling refused to take a breath test. According to the officer, Bowling displayed mood swings throughout the incident, going from belligerent and irritated to calm. When the officer was asked at trial where he believed the odor of alcohol was coming from, he stated that there was a strong odor of alcohol coming from the boat, and a moderate odor of alcohol coming from Bowling. When asked whether he determined that Bowling "was under the influence to the extent that [it] was less safe to operate that vessel," the officer testified that he concluded after conducting field sobriety tests that Bowling "was a less safe boat operator."

Bowling contends that the evidence was insufficient to prove beyond a reasonable doubt that he was a less safe driver, or that he was a less safe driver due to the presence of alcohol. He urges that the officer could not recall whether the life jackets and fire extinguisher were eventually found, did not know whether the boat's spotlight worked (which would explain why Bowling asked for a flashlight), and admitted that some operators cannot locate registration documents. He argues further that there was no evidence that he was operating the boat in an unsafe manner, that the hand pat and finger dexterity tests are not part of standard field sobriety exercises, that argumentativeness does not necessarily prove that someone is under the influence of alcohol, that the officer failed to give his opinion of what the six clues of the HGN test indicate about a person's level of intoxication, that a counting test was performed correctly, and that the officer gave inconsistent statements regarding the source and strength of the alcohol odor. Reversal is not required.

In order to obtain a conviction for driving under the influence of alcohol to the extent it is less safe to drive, the state must prove that the defendant had impaired driving ability as a result of drinking alcohol.[5] A trier of fact can find that a driver was "less safe" based on circumstantial evidence, such as where the driver exhibited signs of

---

[5] See generally *Baird v. State*, 260 Ga. App. 661, 663 (1) (580 SE2d 650) (2003) (involving OCGA § 40-6-391 (a) (1), the statute for motor vehicles which is nearly identical in substance to OCGA § 52-7-12 (a) (1)).

intoxication.[6] Field sobriety tests are not designed to detect the mere presence of alcohol, but to produce information regarding whether alcohol is present at an impairing level such that the driver is less safe.[7]

Bowling's refusal to submit to chemical tests of his breath is circumstantial evidence of intoxication.[8] And, a jury could have found from Bowling's performances on several of the sobriety tests that he was not as alert or physically capable and was a less safe driver than he would have been had he not consumed alcohol.[9] Moreover, there was evidence that the smell of alcohol emanated from Bowling's person, that he stumbled badly while trying to board the patrol boat, that an empty wine glass lay on the floorboard, and that Bowling was confused. There was also opinion testimony from the officer that Bowling was under the influence to the extent he was a less safe boat operator. This testimony followed a series of questions regarding the officer's detection of the odor of alcohol emanating from the boat and from Bowling's person. A police officer may offer opinion evidence that a person was a less safe driver.[10] We add that, contrary to Bowling's position, the state was not required to prove that he committed an unsafe act in order to show it was "less safe" for him to operate the vessel.[11]

A rational trier of fact could have found from evidence of alcohol on the boat, the odor of alcohol emanating from Bowling's person, Bowling's refusal to submit to chemical tests of his breath, his demeanor and conduct, and his performance on several sobriety tests, that he was impaired and that the impairment was a result of alcohol consumption. The evidence was sufficient for a rational trier of fact to find Bowling guilty beyond a reasonable doubt of operating a boat while under the influence of alcohol to the extent it was less safe for him to do so.[12]

*Judgment affirmed. Ruffin, C. J., and Barnes, J., concur.*

DECIDED JULY 26, 2005 —
RECONSIDERATION DENIED AUGUST 10, 2005 — 

*Banks, Stubbs, Neville & Cunat, Rafe Banks III*, for appellant.

---

[6] See generally *Heath v. State*, 229 Ga. App. 69, 70-71 (493 SE2d 225) (1997).

[7] See *Kirkland v. State*, 253 Ga. App. 414, 416 (559 SE2d 161) (2002).

[8] See *Duren v. State*, 252 Ga. App. 257, 260 (555 SE2d 913) (2001).

[9] See generally id.; *Heath*, supra.

[10] *Byrd v. State*, 240 Ga. App. 354 (523 SE2d 578) (1999).

[11] See *Duren*, supra; *State v. Smith*, 196 Ga. App. 876, 877 (397 SE2d 304) (1990).

[12] See *Buckalew*, supra at 135-136 (1) (a).

*Jerry Rylee, Solicitor-General, Francis J. Moran III, Larry A. Baldwin II, Assistant Solicitors-General,* for appellee.