## 57567. BERGER v. THE STATE.

QUILLIAN, Presiding Judge.

This is an appeal, via the interlocutory route (Code Ann. § 6-701 (a) 2 (A) (Ga. L. 1965, p. 18; 1968, pp. 1072, 1073; 1975, pp. 757, 758)), from the denial of a motion to suppress.

The assistant manager of the Hyatt Regency Hotel was given a briefcase that had been found in the main lobby. It was closed but not locked. It was not an unusual occurrence to find several misplaced briefcases each day in the hotel. He opened the briefcase to see if it contained any identification of its owner. It contained a wallet, a large amount of "business papers" and "bundles of money." Two men who inquired about the briefcase were directed to his office. One man, the defendant, stated that it was his briefcase. The manager asked him if he had any personal identification. The defendant told him his identification was in the wallet in the briefcase. The manager stated that it was hotel policy that identification must be made from the person and not from the lost object and "if the person can't identify themselves, obviously we can't give it out." The manager was particularly concerned about this item because of the large amount of cash it contained. Both men were getting "agitated" and "a bit loud."

Police officers Derrick and Cochran, were employed by the hotel as security personnel while they were off duty. Officer Derrick received a call over his "beeper" and was directed to report to the assistant manager's office. Officer Derrick testified that when he arrived the assistant manager briefed him on the situation and he identified himself to the defendant and asked him if the

briefcase was his. The defendant stated that it was. Officer Derrick asked defendant if he had "any identification, driver's license or anything like that." The defendant "said it was in the briefcase . . ." According to Officer Derrick the briefcase was unlocked and "the top was mostly down." He "opened up the case, pulled out the billfold" and *left the briefcase open.* Officer Derrick asked the defendant to write out his signature for comparison purposes. "As I was looking at the signatures on the driver's license and . . . the signature on the piece of paper, the case was right in front of me and I noticed there was a bag of what I thought was marijuana inside the case in the back of it . . . and [the defendant] saw me see the marijuana . . . that's when he said . . . 'I don't want you to search the briefcase.'" On cross examination Officer Derrick admitted at the preliminary hearing he had testified that "It was hard to determine exactly when [the defendant] said [he didn't want him to look in the briefcase] . . . I don't know if he saw me see it, and then said it, or what." He reaffirmed his testimony given at the suppression hearing and on redirect acknowledged he had testified at the preliminary hearing: "My best recollection is it was almost at the same time when I saw it. He saw me see it, that's when I said you are under arrest and he said you cannot search my briefcase." Officer Cochran corroborated portions of Officer Derrick's version of the event.

The defendant testified that when he was asked for identification by the assistant manager he took his wallet out of the briefcase and told the manager what was in it and at that time the officers came in. He stated the briefcase was closed and the wallet was in his hand. When asked for identification he showed Officer Derrick his driver's license and he signed his name to let the officer make a comparison. He testified that Officer Derrick said: " . . . yeah, that's you all right . . . but that doesn't prove that this is your briefcase . . . I am going to have to look in it . . . It was closed . . . I said I would prefer that you did not look in it." Although he repeated his request not to look in the briefcase the officer opened it and searched through the briefcase until he found the marijuana, cocaine, and $7,000 in cash. The court denied the motion

to suppress. Defendant brings this appeal. *Held:*

Defendant argues that warrantless searches and seizures are invalid except under recognized exceptions. Katz v. United States, 389 U. S. 347, 357 (88 SC 507, 19 LE2d 576). They contend that under United States v. Chadwick, 433 U. S. 1 (97 SC 2476, 53 LE2d 538) the defendant had a reasonable expectation of privacy in his briefcase which was protected by the Fourth Amendment. Counsel is correct in his interpretation of Chadwick where the U. S. Supreme Court held that federal agents violated the Fourth Amendment by searching a locked footlocker at the police station which was in possession of the defendant when he was arrested. However, Chadwick is inapposite under the facts. Here the defendant was not arrested, nor did he have the briefcase "in his possession." The briefcase had been misplaced. Innkeepers of this state have a statutory liability to guests for property coming into their possession. See Code Ann. §§ 52-108, 52-109 (Code §§ 52-108, 52-109). It is not an unauthorized search for hotel management personnel, including security personnel, to open unlocked items found on their premises in an attempt to determine ownership so that the lost or misplaced property can be returned to its proper owner. Nor do we discern any difference in the situation here when the security officer was a police officer employed by the hotel in his "off-time." He was acting in his capacity as a hotel security officer and not attempting a search for incriminating evidence. In *Lowe v. State,* 230 Ga. 134, 136 (195 SE2d 919), a police officer at the scene of a fire had his attention directed to papers and a money bag in an automobile belonging to the defendant, which had been pushed away from the burning house. The officer confiscated the articles for "safekeeping [because] he had no idea whose property they were." The court held that the situation was "devoid of any implications of an unconstitutional search and seizure . . . [as] the incriminating evidence came into the possession of the law enforcement authorities inadvertently and unmotivated by any desire to locate incriminating evidence by any unlawful search and seizure." Id. at 136. In the same manner, in the instant case the incriminating evidence came into possession of the law enforcement

authorities inadvertently and unmotivated by any desire to locate incriminating evidence. Assuming without deciding that officer Derrick was acting as a police officer, we find nothing unlawful about a police officer opening an unlocked, lost or misplaced item to determine ownership. The marijuana was then in plain view and the officer was authorized to confiscate the contraband. *Hatcher v. State,* 141 Ga. App. 756 (234 SE2d 388).

In his finding of fact the trial court determined: "The briefcase was ajar, but in order to reach in and get the wallet officer Derrick lifted the top of the briefcase and retrieved the described wallet . . . With the briefcase open some of the contents were in plain view. Sergeant Derrick noticed a clear plastic bag containing what appeared to him to be marijuana. He then told the defendant he was under arrest . . ." In a motion to suppress, "[f]actual and credibility determinations of this sort made by a trial judge after a suppression hearing must be accepted by appellate courts unless such determinations are clearly erroneous." *Johnson v. State,* 233 Ga. 58 (209 SE2d 629). The trial court chose to believe the police officers' version of the sequence of events and there is evidence to support his finding. His findings are not "clearly erroneous." This enumeration is without merit.

*Judgment affirmed. Smith and Birdsong, JJ., concur.*

ARGUED APRIL 4, 1979 — DECIDED MAY 3, 1979 — REHEARING DENIED JUNE 5, 1979 — ▮▮▮▮▮▮▮▮▮▮

*Garland, Nuckolls, Kadish & Cook, Mark J. Kadish, Rhonda A. Brofman,* for appellant.

*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Benjamin H. Oehlert, III, Assistant District Attorneys,* for appellee.