A06A1417. REYNOLDS v. THE STATE.
(634 SE2d 842)

BLACKBURN, Presiding Judge.

In this interlocutory appeal, Dusty Reynolds contends that the trial court erred in denying his motion to suppress drugs seized by the police at the time of his arrest. He argues that the police had no reasonable articulable suspicion to justify his detention and thus his flight was lawful, and the subsequent seizure was illegal. For the reasons set forth below, we affirm.

In reviewing the denial of a motion to suppress, "the evidence is construed most favorably to uphold the court's findings and judgment. If there is any evidence to support the trial court's findings on disputed facts and credibility, they will not be disturbed unless

---

clearly erroneous." (Punctuation omitted.) *Fitz v. State.*[1] "However, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review." (Punctuation omitted.) *State v. Harris.*[2]

So viewed, the record shows that on the night of January 24, 2003, police officers were executing a search warrant at the rural residence of David Silvers, located at 174 Circle S Drive in Jasper. While the officers were in the process of executing the warrant, Dusty Reynolds was traveling on Circle S Drive in his truck toward the residence of Danny Silvers, David Silvers's brother. The two Silvers brothers lived near each other near the end of Circle S Drive, but the residences were several hundred yards apart and both possessed separate unpaved driveways. Neither Danny Silvers nor his residence was a subject of the warrant.

As Reynolds's truck neared Danny's driveway, his progress was impeded by the officers' vehicles that had formed a perimeter around David's residence. At the same time, several officers approached Reynolds's truck, identified themselves as law enforcement officers, and ordered him to exit the vehicle. Reynolds complied and shortly thereafter, one of the officers noticed a rifle lying on the floor of Reynolds's truck. The officer yelled "gun" to alert the other officers as to the weapon's presence, at which point Reynolds started running away from the truck toward a wooded area. After a short chase, he was apprehended and arrested for obstruction of justice. In addition, the officers found a quantity of methamphetamine within a few feet of where Reynolds was apprehended.

Reynolds was indicted for possession of methamphetamine,[3] obstruction of a law enforcement officer,[4] and possession of a firearm during the commission of a crime.[5] He filed a motion to suppress the methamphetamine as evidence on the grounds that it was obtained as the result of an illegal stop. Following a hearing, the trial court issued a written order denying Reynolds's motion. In its order, the trial court found that Reynolds's vehicle was stopped outside of the curtilage of David Silvers's residence and thus outside of the area covered by the search warrant. The trial court's order also found that prior to Reynolds's flight, the officers had no reasonable articulable suspicion warranting a search or further detention of Reynolds, but

---

[1] *Fitz v. State*, 275 Ga. App. 817 (1) (622 SE2d 46) (2005).
[2] *State v. Harris*, 261 Ga. App. 119 (581 SE2d 736) (2003).
[3] OCGA § 16-13-30.
[4] OCGA § 16-10-24.
[5] OCGA § 16-11-106.

that Reynolds's subsequent flight provided the suspicion justifying his arrest and the search of his person and vehicle. This interlocutory appeal followed.

1. Reynolds contends that the trial court erred in denying his motion to suppress the methamphetamine found at the scene of his arrest, arguing that his initial detention was unlawful and therefore all of the actions of the officers following that detention were also unlawful. We disagree.

According to *Terry v. Ohio*,[6] police-citizen encounters are generally categorized into three tiers: consensual encounters; brief investigatory stops, which require reasonable articulable suspicion; and arrests that must be supported by probable cause. *Harris*, supra, 261 Ga. App. at 121. An investigative stop of a vehicle is included within the scope of second-tier encounters and therefore "must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (Punctuation omitted.) *Hughes v. State*.[7] "The officer must have a particularized and objective basis for suspecting the particular person stopped of criminal activity. While the officer's suspicion need not meet the standard of probable cause, it must be more than mere caprice or a hunch or an inclination." (Punctuation and footnote omitted.) *Smith v. State*.[8]

It is undisputed that the police subjected Reynolds to a *Terry* stop second-tier encounter: they stopped him and ordered him to exit his vehicle. At that time, the police had no specific articulable facts sufficient to give rise to a reasonable suspicion that he was engaged in criminal conduct. He was not a subject of the search warrant and had not committed any traffic violations as his vehicle approached the Silverses' residences. Furthermore, as the trial court acknowledged, Reynolds's vehicle was not within the curtilage of the residence subject to the search warrant when it was stopped and therefore could not be lawfully detained or searched pursuant to that warrant. See *State v. Mallard*[9] (officer had no articulable suspicion that law had been violated justifying investigative stop of defendants' vehicle after it left a residence where police were preparing to execute a search warrant); see also *State v. Holmes*.[10] While the police, in executing the search, could have legitimately prevented Reynolds's vehicle from entering the subject property, that is not what happened. Rather, police stopped his vehicle from entering another property

[6] *Terry v. Ohio*, 392 U. S. 1, 21 (88 SC 1868, 20 LE2d 889) (1968).

[7] *Hughes v. State*, 269 Ga. 258, 259 (1) (497 SE2d 790) (1998).

[8] *Smith v. State*, 245 Ga. App. 613, 615 (538 SE2d 517) (2000).

[9] *State v. Mallard*, 246 Ga. App. 357, 365 (541 SE2d 46) (2000).

[10] *State v. Holmes*, 240 Ga. App. 332, 334 (525 SE2d 698) (1999).

and ordered Reynolds to exit the vehicle in order to question him, which required a reasonable articulable suspicion of criminal conduct they admittedly did not possess. See *Mallard*, supra, 246 Ga. App. at 365. Thus, the officers' second-tier stop and detention of Reynolds was illegal.

As in *Strickland v. State*,[11] however, our analysis does not end here, because the methamphetamine at issue was not found in Reynolds's vehicle or on his person during the course of the improper *Terry* stop. It was found after Reynolds fled from the officers and allegedly discarded it prior to his apprehension. This Court has previously recognized that

> evidence is not impermissibly tainted simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which the objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.

*Strickland*, supra, 265 Ga. App. at 538. See also *Eichelberger v. State*.[12] The law is clear that a police officer is not discharging his lawful duty when he performs a *Terry* detention on a citizen without a reasonable articulable suspicion for suspecting criminal activity. *Strickland*, supra, 265 Ga. App. at 538. Here, Reynolds was improperly detained by the officers and would have had the right to refuse any requests that his vehicle or person be searched. Had he done so and the officers then arrested and searched him, the fruits of any search likely would have been suppressed. See *Mallard*, supra, 246 Ga. App. at 365; *Holmes*, supra, 240 Ga. App. at 334.

However, that is not the action Reynolds took. Instead, the undisputed evidence is that Reynolds fled shortly after the detention began. "[R]egardless of the propriety of an officer's basis for the execution of a *Terry* traffic investigative stop, attempting to flee from such stop is a separate crime altogether, i.e., fleeing or attempting to elude a police officer." *Eichelberger*, supra, 252 Ga. App. at 803-804 (2). Such offense does not require that the investigative stop be proper. Id. at 804 (2). The determination of whether there is a legal basis for a *Terry* stop does not belong to the detainee, thereby giving him the right to flee if he determines he is being stopped illegally.

---

[11] *Strickland v. State*, 265 Ga. App. 533 (594 SE2d 711) (2004).

[12] *Eichelberger v. State*, 252 Ga. App. 801, 803-804 (2) (557 SE2d 439) (2001).

See id.; *Davis v. State.*[13] Given that Reynolds's flight from the *Terry* investigative stop provided an independent basis for his arrest, the methamphetamine found in close proximity was admissible. See *Strickland,* supra, 265 Ga. App. at 540; *Eichelberger,* supra, 252 Ga. App. at 804 (2).

"A trial court's ruling on a motion to suppress will be upheld if it is right for any reason." *State v. Sims.*[14] For the reasons set forth above, we find that the denial of Reynolds's motion to suppress was proper.

2. In light of our holding in Division 1, supra, that the officers' initial detention of Reynolds was not based on any reasonable articulable suspicion but that Reynolds's flight provided an independent basis for his arrest and the seizure of the methamphetamine, Reynolds's contention that his flight did not provide the officers with reasonable articulable suspicion is without merit.

*Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED JULY 26, 2006.

*Bray & Johnson, Jonathan A. Kesler,* for appellant.
*Joe W. Hendricks, Jr., District Attorney,* for appellee.

---

[13] *Davis v. State,* 235 Ga. App. 10, 11 (1) (507 SE2d 827) (1998).
[14] *State v. Sims,* 248 Ga. App. 277, 278 (546 SE2d 47) (2001).