A07A1396. THE STATE v. STAFFORD et al.
(653 SE2d 750)

JOHNSON, Presiding Judge.

The State appeals the trial court's order granting Jeffery Stafford's and Jeffrey Doyle's motion to suppress evidence seized in a traffic stop during which an officer, after arresting Stafford for obstructing him, searched the car and found a substance which a field test showed to be cocaine.[1] The State contends that the trial court erred in concluding that the stop, initiated by the officer on the grounds that Stafford's car was improperly parked in the road in violation of the traffic laws, was invalid. For the reasons set forth below, we agree and reverse.

---

[1] In connection with this incident, the DeKalb County district attorney accused Stafford and Doyle, the car's passenger, of possessing cocaine in violation of the Georgia Controlled Substances Act. The district attorney also accused Stafford of obstruction of an officer and Doyle of giving a false name to a law enforcement officer.

When we review a trial court's decision on a motion to suppress, the evidence is construed most favorably to uphold the findings and judgment of the trial court; the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous and will not be disturbed if there is any evidence to support them. Where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.[2]

So viewed, the evidence adduced at the hearing on the motion to suppress shows the following. On January 9, 2006, at approximately 1:30 a.m., a DeKalb County police officer was conducting a patrol in what the officer referred to as a "high crime area." The officer testified that he saw a car parked in the middle of the street with no lights on. Several people were standing around both sides of the vehicle, and the officer thought "it was a drug deal going down." The people around the car took flight when they saw the officer, and the car began to pull away.

The officer turned on his patrol car's blue lights and stopped the car, which was driven by Stafford. According to the officer, he stopped the car because it had been parked in the middle of the street in violation of the traffic laws. At the hearing, the officer could not identify the Code section which he believed had been violated, but he testified that he had read the Code section which prohibited parking in the middle of the street. He also maintained that the circumstances could present a danger of people being hit by another vehicle.

As he was exiting his patrol car, the officer saw Stafford fumbling with something under the seat of the car. The officer became concerned about the presence of a weapon. The officer asked Stafford to step out of the car, patted him down to see if he was armed, and, after finding no weapons, advised Stafford that he was not under arrest but that Stafford should sit in the patrol car until the officer finished his investigation. Stafford got in the back seat of the patrol car, but tried to push the door open as the officer was closing it. The officer used pepper spray to subdue Stafford, who jumped back in the patrol car. At this point, the officer considered Stafford to be under arrest for obstruction of an officer.

The officer returned to the car and asked the passenger, Doyle, to get out. While opening the door, the officer saw a "crack pipe" in the

[2] (Citations and punctuation omitted.) *State v. Hall*, 276 Ga. App. 769 (624 SE2d 298) (2005).

car. The officer arrested Doyle for violation of the Georgia Controlled Substances Act, and then searched the car. The officer found three white, chunky substances on the driver's side floorboard. A field test showed the material was cocaine.

Stafford testified that he stopped his car momentarily on the right side of the street with his lights on, and people came up to the car and began reaching inside. Stafford claimed that he was a real estate agent, and that he was in the area to show Doyle where he could get some construction work. According to Stafford, he had stopped to look for a particular person who could help in finding a construction job. The trial court found at least some of Stafford's testimony not to be credible, particularly Stafford's explanation for why he was in the area at 1:30 a.m.

After hearing testimony and considering counsels' argument, the trial court concluded that there was a lack of evidence on the record that the traffic stop was valid. The trial court then ruled that it would exercise its discretion and grant Stafford's and Doyle's motion to suppress based on *State v. Dukes*.[3]

1. The State contends that the traffic stop initiated by the officer based upon improper "stopping, standing, or parking" in violation of OCGA § 40-6-202 was valid, and that the trial court erred in finding otherwise. We agree.

> If the officer acting in good faith believes that an unlawful act has been committed, his actions are not rendered improper by a later legal determination that the defendant's actions were not a crime according to a technical legal definition or distinction determined to exist in the penal statute. The question to be decided is whether the officer's motives and actions at the time and under all the circumstances, including the nature of the officer's mistake, if any, were reasonable and not arbitrary or harassing.[4]

Here, the officer testified that he stopped Stafford's car because it was parked in the middle of the road, which the officer considered to be a traffic violation. The trial court did not question the officer's motives, and it is apparent from discussions during the course of the motion hearing that the trial court accepted the officer's versions of events over that of Stafford, including the officer's testimony that Stafford's car was parked in the middle of the road. But the trial court

---

[3] 279 Ga. App. 247 (630 SE2d 847) (2006).

[4] (Citations and punctuation omitted.) *State v. Hammang*, 249 Ga. App. 811 (549 SE2d 440) (2001).

also concluded there was a lack of evidence showing that Stafford had committed a crime, noting that "the intent [of OCGA § 40-6-202] is to apply the statute where stopping or parking in the middle of the street or roadway impeded the safe flow of traffic. And the record is just devoid of that element of the requirement."

OCGA § 40-6-202 provides:

> Outside of a business or residential district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the roadway when it is practicable to stop, park, or so leave such vehicle off the roadway; but in every event, an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles, and a clear view of the stopped vehicle shall be available from a distance of 200 feet in each direction upon the highway.

Evidence that a car was parked in the road so as to block the right lane of a city street is sufficient to support a conviction under this Code section.[5] In the context of a motion to suppress, we have found that an officer was authorized to initiate a traffic stop because, among other things, the trial court recognized that "parking in the middle of the road is a traffic violation."[6] It is true that we have previously held that OCGA § 40-6-202 "does not apply to a momentary stopping of a motor vehicle on the highway but applies to situations where the stopping or parking impedes the safe flow of traffic."[7] But even assuming that a lack of evidence as to how long a car had been stopped and whether the car impeded the safe flow of traffic might ultimately preclude a conviction under OCGA § 40-6-202, it does not follow that the officer did not have a particularized and objective basis for suspecting Stafford of violating this Code section at the time the officer initiated the traffic stop. While the officer may not have known how long Stafford's car had been parked in the middle of the street, he could see it had been parked long enough to attract several people to both sides of the car, and, even at 1:30 in the morning, the officer could reasonably consider this situation to adversely affect traffic safety.

In finding that there was a lack of evidence to support a valid traffic stop, the trial court also noted that "[t]his is a residential street . . . it wasn't an interstate or anything like that." Stafford and Doyle contend that because Stafford was parked on a residential

---

[5] *Marsengill v. State*, 275 Ga. App. 840, 843 (2) (622 SE2d 58) (2005).

[6] *Welch v. State*, 263 Ga. App. 70, 71 (587 SE2d 220) (2003).

[7] *Cox v. Allen*, 256 Ga. App. 53, 55 (2) (567 SE2d 363) (2002).

street that OCGA § 40-6-202 was wholly inapplicable in view of the statute's proviso that "outside of a business or residential district," certain parking is not allowed. This court has previously indicated that OCGA § 40-6-202 prohibits parking only on a street in a residential or business district, as opposed to a rural area.[8] Unfortunately, we have also indicated the opposite — that OCGA § 40-6-202 prohibits stopping, standing, or parking in areas *other* than a business or residential district.[9] But we need not resolve this apparent conflict here. "It is not the officer's function to determine on the spot such matters as the legal niceties in the definition of a certain crime, for these are matters for the courts."[10] The evidence showed that the officer reasonably believed that parking in the middle of a residential street was a crime, and particularized and objective facts gave rise to a reasonable suspicion that the crime had been committed.[11]

> There were specific and articulable facts which, together with reasonable inferences based on those facts, justified a limited inquiry. The State must demonstrate some basis from which the court can determine that the detention was not pretextual, arbitrary or harassing, and not based upon mere inclination, caprice, or a "hunch" by law enforcement. It did so here.[12]

Accordingly, we conclude that the trial court had no legal basis for finding that the traffic stop was invalid.[13]

2. The State also contends that the trial court erred in granting the motion to suppress because the officer was authorized to arrest

---

[8] See *White v. Scott*, 284 Ga. App. 87, 92 (3) (643 SE2d 356) (2007) (physical precedent only). See also *Marsengill*, 275 Ga. App. at 841 (1) (upholding conviction for parking on a "city street").

[9] See *Southern Intermodal Logistics v. Coleman*, 175 Ga. App. 853, 854 (2) (334 SE2d 888) (1985).

[10] (Citation and punctuation omitted.) *Dixon v. State*, 271 Ga. App. 199, 201 (609 SE2d 148) (2005).

[11] See *State v. Rheinlander*, 286 Ga. App. 625, 626 (649 SE2d 828) (2007) ("[t]he driver's actions need not amount to a traffic violation, so long as the officer has a reasonable, articulable suspicion that a traffic offense was being committed") (citation and punctuation omitted).

[12] (Citation omitted.) *State v. Armstrong*, 223 Ga. App. 350, 353 (2) (477 SE2d 635) (1996).

[13] See *Rheinlander*, 286 Ga. App. at 626 (trial court's finding that driver may have had innocent explanation for swerving to avoid police car not dispositive of whether officer had articulable suspicion that traffic offense was being committed); *Dixon*, 271 Ga. App. at 202 (officer had good faith, reasonable belief that all lights on a vehicle, including fog lights, must be in good working order; that vehicle was not required to have fog lights did not render stop for faulty fog light invalid); *Hammang*, 249 Ga. App. at 811 (trial court's grant of motion to suppress reversed where officer stopped suspect at approximately 9:00 p.m. for not having her headlights on, and trial court found no articulable suspicion for the stop because, based on the time of sunset, the driver was not required to have her lights on until 9:04 p.m.).

Stafford for obstruction of an officer and then to search his car incident to the arrest. Again, we agree.

During the hearing on the motion to suppress, defense counsel argued that the encounter between the defendants and the officer was a "first tier" encounter, and that the officer therefore did not have probable cause to arrest Stafford for obstruction of an officer. The trial court apparently agreed, specifically relying on *State v. Dukes*[14] in announcing its decision during the motion hearing to grant the defendants' motions to suppress.

*Dukes* involved a "first tier" encounter between the defendant Dukes and police officers who approached Dukes at a picnic table and questioned him.[15] The officers did not seize Dukes during the initial encounter, nor did they have the reasonable suspicion of criminal activity needed for a second tier detention.[16] As we explained

[i]n the first tier, police officers may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave. The second tier occurs when the officer actually conducts a brief investigative *Terry* stop of the citizen. In this level, a police officer, even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity.[17]

In a first tier encounter, a citizen has a right to leave the encounter, and exercise of that right does not constitute obstruction of an officer.[18] Thus, we concluded that the police did not have probable cause to arrest Dukes for obstruction when he eventually decided to run away from the officers.[19] In this case, however, the officer stopped Stafford's car, which had pulled away from its parked position, by activating his blue lights and then attempted to detain

[14] 279 Ga. App. at 247.
[15] Id. at 247-248.
[16] Id. at 249-250.
[17] (Footnote omitted.) Id. at 248-249.
[18] Id. at 251.
[19] Id.

Stafford in the back of his patrol car while he performed his investigation.[20] An investigative stop of a vehicle is a second tier encounter, and the suspect does not have the right to flee from the encounter or decline to stop.[21] When Stafford hindered the officer's attempt to detain him in the patrol car by pushing the door open as the officer was trying to close it, the officer had probable cause to arrest Stafford for obstruction of an officer.[22] After arresting Stafford for obstruction, the officer was authorized to search the passenger compartment of the car incident to the arrest.[23] *Dukes* does not demand a different result.

It follows that the trial court's grant of Stafford's and Doyle's motion to suppress must be reversed.

*Judgment reversed. Phipps and Mikell, JJ., concur.*

DECIDED AUGUST 20, 2007 —
RECONSIDERATION DENIED NOVEMBER 8, 2007 — ■

*Gwendolyn Keyes Fleming, District Attorney, Leonora Grant, Assistant District Attorney,* for appellant.
*Alden W. Snead, Gerard B. Kleinrock,* for appellees.

---

[20] See *Campbell v. State*, 255 Ga. App. 502, 505 (1) (b) (565 SE2d 834) (2002) (under circumstances, placing person in rear seat of patrol car was justifiable momentary detention during *Terry* stop).

[21] *Reynolds v. State*, 280 Ga. App. 712 (634 SE2d 842) (2006); *Eichelberger v. State*, 252 Ga. App. 801, 803-804 (2) (557 SE2d 439) (2001).

[22] See OCGA § 16-10-24 (a) ("person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor"); *Weidmann v. State*, 222 Ga. App. 796, 798 (2) (476 SE2d 18) (1996) (misdemeanor obstruction conviction affirmed where, among other things, defendant resisted officer's attempt to place her in patrol car and then tried to exit the vehicle).

[23] See *Boone v. State*, 282 Ga. App. 67, 71 (2) (637 SE2d 795) (2006).