## A08A0620. WOLF v. THE STATE.
### (663 SE2d 292)

MIKELL, Judge.

We granted William Ernest Wolf's application for interlocutory appeal in order to determine whether the trial court erred in denying his motion to suppress contraband found by a police officer inside the wallet Wolf lost at a concert. Because the officer's discovery of the contraband violated Wolf's rights under the Fourth Amendment, we reverse.

A trial court's order on a motion to suppress will not be disturbed on appellate review if there is any evidence to support it, and we will accept the trial court's decision with regard to questions of fact and credibility unless clearly erroneous.[1] "We construe all evidence presented in favor of the trial court's findings and judgment."[2]

Properly viewed, the evidence adduced at the hearing on the motion to suppress showed that on the evening of August 5, 2006, Wolf's wallet was found by Stan Moore, a POST-certified policeman who had been employed by the City of Covington Police Department for four years. That evening Moore, while off duty, was providing security at a concert held in a commercial building at an industrial park in Covington and attended by approximately 300 to 350 people. Around 9:45 p.m., while the concert was in progress inside the building, Moore spotted a partially open checkbook style wallet lying on the ground in the darkness outside the building. Moore testified that he did not believe that the wallet had been abandoned or thrown away by its owner; he thought that it was just "found property," inadvertently lost by the owner.

Moore picked the wallet up and looked inside it three times. The first time, he looked inside for the owner's identification. He found a driver's license belonging to Wolf, but he did not see any contraband in the wallet at that time or when it was lying open outside. Moore held the wallet in his hand while he and the other security officers

---

[1] *Williams v. State*, 273 Ga. App. 637, 638 (615 SE2d 789) (2005).
[2] (Citation omitted.) Id.

looked for its owner. As Moore held the wallet in his hand, he felt through the outside of the wallet "something granular . . . crunching around" inside it. Moore opened the wallet a second time in order to discover what this "something" might be. Inside he found a bag of methamphetamine in the part of the wallet that would normally hold money. Moore testified that his motives for this second examination of the contents of the wallet were twofold: he thought he might have broken something glass inside the wallet, and he thought there might be contraband inside the wallet. After finding the contraband, Moore opened the wallet a third time, looking for an automobile insurance card so that he could find the owner's car. Although Moore never "thoroughly searched" the wallet, he was able to testify that it appeared to contain credit cards and money, as well as Wolf's driver's license, automobile insurance card, and the bag of methamphetamine.

From the information on Wolf's automobile insurance card, Moore was able to locate Wolf's car parked outside the building. Another security officer saw Wolf inside the building as the concert was ending. The officers told Wolf that they wanted to talk to him about the contraband found in his wallet. Wolf acknowledged that the wallet was his, but disavowed ownership of the contraband, saying that "it was planted there." He was placed under arrest and was searched. The empty shell of a plastic pen was found inside his pocket. Wolf was subsequently charged with possession of methamphetamine and with possession and use of drug-related objects.

Wolf moved to suppress both the contraband found in his wallet and the empty plastic pen shell. At the hearing on the motion to suppress, Moore was the only witness. The trial court denied the motion, finding as fact that Moore came into possession of the wallet inadvertently; that he opened the wallet the first and third times looking for information about its owner; and that he opened it the second time "because he suspected he might have broken something inside the wallet." The court noted that Moore also testified that, from his experience as a police officer, he suspected the presence of drugs inside the wallet.

The trial court found from the totality of the circumstances that Wolf lost his wallet outside the concert building in a public place, from which Wolf did not have the right to exclude others; that Wolf did not have possession of the wallet when Moore found it; and that, by losing his wallet in such a place, Wolf lost any expectation of privacy in it. Concluding that none of the officer's three examinations of the wallet's contents violated Wolf's Fourth Amendment rights, the trial court denied Wolf's motion to suppress.

Wolf contends that the officer's second examination of the contents of Wolf's wallet was a warrantless search in violation of his

Fourth Amendment rights, and that the trial court erred in denying Wolf's motion to suppress the evidence found in that search and in the subsequent search of Wolf's person upon his arrest. Because we agree, we do not address the issue of the validity of the first and third searches of Wolf's wallet.

1. The trial court reasoned that, because Wolf lost his wallet, he lost all expectation of privacy therein. This reasoning is erroneous. Wolf's wallet was lost, not abandoned. Although "it is settled law that one has no standing to complain of a search or seizure of property he has *voluntarily* abandoned,"[3] the question of whether a defendant has abandoned an item of personal property hinges upon his intent, that is, "whether the person prejudiced by the search had *voluntarily* discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search."[4] It is also true that "what a person *knowingly* exposes to the public . . . is not a subject of Fourth Amendment protection."[5]

In the case before us, however, there is no evidence that the loss of Wolf's wallet was either voluntary or knowing, or that it was anything other than inadvertent. Wolf claimed ownership of the wallet when the officer showed it to him at the concert, and thus he evidenced his continued expectation of privacy in an item that, like a briefcase, suitcase, or other closed container, is "traditionally a repository for items of a private nature."[6] Such "items of a private nature" (Wolf's driver's license, automobile insurance card, and money, as well as the contraband) were present in the wallet when it

---

[3] (Citations omitted; emphasis supplied.) *United States v. Colbert*, 474 F2d 174, 176 (I) (5th Cir. 1973) (defendants abandoned briefcases by denying ownership and walking away) (id. at 177 (I)). Accord *Keilholtz v. State*, 261 Ga. App. 1, 4 (2) (581 SE2d 660) (2003) (defendant abandoned car by voluntarily and unequivocally disavowing ownership).

[4] (Citations omitted; emphasis supplied.) *Colbert*, supra at 176 (I). Accord *Osment v. State*, 256 Ga. App. 591, 593 (569 SE2d 262) (2002) (motion to suppress properly denied where defendant effectively abandoned bag by denying ownership thereof). Compare *State v. Browning*, 209 Ga. App. 197, 198 (433 SE2d 119) (1993) (defendant did not abandon her purse, even though she left it open in another's apartment).

[5] (Citation and punctuation omitted; emphasis supplied.) *California v. Greenwood*, 486 U. S. 35, 41 (II) (108 SC 1625, 100 LE2d 30) (1988) (warrantless search and seizure of garbage bags left for collection outside the curtilage of a home did not violate Fourth Amendment) (id. at 37). Accord *Thomas v. State*, 263 Ga. 85, 87 (3) (428 SE2d 564) (1993) (letters deliberately left by defendant under prison barber chair were not protected from seizure).

[6] (Citations omitted.) *Robinson v. State*, 226 Ga. App. 406, 408 (2) (486 SE2d 667) (1997) (where defendant permitted his passenger to wear defendant's jacket and "to have unlimited control over the jacket and its contents, [defendant] relinquished whatever expectation of privacy he may have had in it") (id. at 408-409 (2)). Accord *State v. McCarthy*, 288 Ga. App. 426, 428-429 (2) (654 SE2d 239) (2007) (search invalid where defendant never disavowed ownership of bag); *State v. Gay*, 269 Ga. App. 331, 333-334 (604 SE2d 572) (2004) (search invalid where defendant acknowledged that backpack belonged to him); *Browning*, supra at 197 (purse not abandoned where defendant identified it as hers).

was found, and there is no reason to think that Wolf voluntarily discarded or abandoned these items.

Although this Court has not directly addressed the question of whether the owner of an item lost but not abandoned retains an expectation of privacy in that item, courts in other jurisdictions have answered this question in the affirmative. "People have a privacy interest in wallets and other personal effects that does not disappear because the personal effect has been lost or mislaid";[7] however, the owner's reasonable expectation of privacy in a lost item is diminished to the extent that the police may examine the contents of that item as necessary to determine the rightful owner.[8]

This reasoning comports with this Court's decision in *Berger v. State*,[9] where a hotel security officer's warrantless search of a briefcase in order to find the identity of the owner was held to be valid under the Fourth Amendment.[10] Relying on *Berger*, the state contends that all three searches of Wolf's wallet were valid. The state's reliance on *Berger* is misplaced, however, because *Berger* is distinguishable on its facts from the case at hand. There, the officer searched a lost briefcase looking for the owner's identification.[11] During the course of that search, marijuana was found in plain sight.[12] This contraband was ruled admissible in evidence.[13] In the case at bar, on the other hand, the second search of Wolf's wallet was not undertaken to obtain further information about the owner. Thus, *Berger* is not controlling in this case, and the warrantless second search of Wolf's wallet was invalid.[14]

2. The state contends that, even if the seizure of the contraband could not be justified under *Berger*, the evidence of contraband was nonetheless admissible under the inevitable discovery doctrine. "We have held that when the evidence in question would inevitably (or ultimately) have been discovered without reference to the police

---

[7] (Citations and emphasis omitted.) *Morris v. State*, 908 P2d 931, 935 (B) (Wyo. 1995) (defendant, not under arrest, inadvertently left wallet in back of police car) (id. at 933). Accord, e.g., *State v. Hamilton*, 314 Mont. 507, 515 (¶¶ 30-31) (67 P3d 871) (2003) (lost wallet turned in to police) (id. at 509 (¶ 6)); *State v. Kealey*, 80 Wash. App. 162, 169 (907 P2d 319) (1995) (misplaced purse); *State v. Paasch*, 117 Ore. App. 302, 304-305 (843 P2d 1011) (1992) (wallet lost at shopping mall); *State v. May*, 608 A2d 772, 775 (Me. 1992) (wallet found in police cruiser after defendant was arrested and released).

[8] See, e.g., *Kealey*, supra at 174-175 (contraband found in lost purse during police search for identification of owner admissible); *State v. Pidcock*, 306 Ore. 335, 342 (759 P2d 1092) (1988) (search valid where, in effort to identify owner, police examined contents of sealed manila envelopes found inside lost briefcase).

[9] 150 Ga. App. 166 (257 SE2d 8) (1979).

[10] Id. at 168.

[11] Id. at 166.

[12] Id. at 169.

[13] Id.

[14] See *Browning*, supra at 198.

error or misconduct, the evidence is admissible."[15] At the suppression hearing, Moore testified that, if he could not find the owner of the wallet during the concert, then after the concert he planned to turn the wallet in at the police station as lost property, where it would be "put into evidence" and the contents inventoried. Moore further testified that this was the normal procedure when lost property was found, rather than seeking the owner by making an announcement over the public address system at the concert. The state contends that the contraband would inevitably have been discovered upon inventory of the contents of the wallet. However, in order for the evidence to be admissible under the inevitable discovery rule, "the prosecution must demonstrate that the lawful means which made discovery inevitable were possessed by the police and were being actively pursued prior to the occurrence of the illegal conduct."[16]

Under the facts of this case, the inevitable discovery doctrine does not apply. Moore testified that, as soon as he found the wallet and determined that Wolf's license was inside, he and the security officers at the concert "began to look through the crowd to see if [they] could recognize Wolf." No effort was made to turn in the wallet at the station at that time. Further, the officers learned that Wolf was present at the concert because they located his parked car there. Shortly after locating his car, they found Wolf himself, making an inventory of the wallet's contents unnecessary. Thus, the evidence was too speculative to support a finding that the contraband would have been inevitably discovered.[17]

3. "The indirect fruits of an illegal search or arrest should be suppressed when they bear a significantly close relationship to the underlying illegality."[18] Wolf's arrest, and the search of his person which revealed the hollow pen, resulted from the impermissible intrusion into his lost wallet. It follows that the pen must also be suppressed as "fruit of the poisonous tree."[19]

*Judgment reversed. Smith, P. J., and Adams, J., concur.*

---

[15] (Citations and punctuation omitted.) *Sudduth v. State*, 288 Ga. App. 541, 543 (2) (654 SE2d 446) (2007).

[16] (Punctuation and footnote omitted.) *Taylor v. State*, 274 Ga. 269, 274-275 (3) (553 SE2d 598) (2001).

[17] See id. at 275 (3); *Sudduth*, supra.

[18] (Punctuation and footnote omitted.) *State v. King*, 287 Ga. App. 680, 683 (652 SE2d 574) (2007).

[19] (Punctuation and footnote omitted.) *State v. Gravitt*, 289 Ga. App. 868, 871 (2) (b) (658 SE2d 424) (2008).

DECIDED JUNE 12, 2008.

*Walker & Waldrop, Michael S. Waldrop, Wendi D. Armstrong*, for appellant.
*W. Kendall Wynne, Jr., District Attorney, Clint C. Malcolm, Assistant District Attorney*, for appellee.