A10A0610. THE STATE v. NESBITT.
(699 SE2d 368)

PHIPPS, Presiding Judge.

In connection with a traffic stop, Douglas Nesbitt was charged with numerous offenses. Nesbitt moved to suppress all evidence seized after the car was stopped. The trial court granted the motion, and the state appeals. For reasons that follow, we affirm.

An appellate court reviewing a trial court's order concerning a motion to suppress evidence should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts:

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must

construe the evidence most favorably to the upholding of the trial court's findings and judgment.[1]

Furthermore,

> [w]hile the trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.[2]

OCGA § 17-5-30 (b) pertinently provides that "the burden of proving that the search and seizure were lawful shall be on the state."[3] At the hearing on Nesbitt's suppression motion, the state's attorney asserted that the evidence would show, inter alia, the following circumstances: a police officer initiated a traffic stop; when the driver stopped the car, he ran away, thereby abandoning the vehicle; while fleeing, the driver threw down contraband; although the officer was not able to apprehend the driver, the officer searched the car and found documents with Nesbitt's name; and with those documents, the officer was able to ascertain Nesbitt's identity. To meet its burden of proof, the state called the only witness at the suppression hearing: the police officer who conducted the traffic stop. The officer testified to the following.

At about 2:00 a.m. on April 13, 2007, the manner in which a Nissan Altima was being driven drew the officer's attention. Concerned that the driver was impaired, the officer initiated a traffic stop. The car turned into an apartment complex parking lot, "took an immediate right and the car pulled into a parking space there in the parking lot, not completely forward into the parking space and kind of sideways between a SUV and another car." The officer testified that, as he was getting out of the patrol car, "[t]he driver got out and opened the door, obviously left it open, looked back toward me appearing to me that he was about to pull away, but he started running." The man disregarded the officer's oral commands to stop and headed toward a line of trees, throwing items onto the sidewalk. The officer lost sight of the man and therefore collected the items

---

[1] *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994) (citations, punctuation and emphasis omitted).

[2] *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994) (citations omitted).

[3] See *State v. Massa*, 273 Ga. App. 596, 597 (615 SE2d 652) (2005) (state has burden to establish existence of circumstances constituting exception to general prohibition against warrantless searches and seizures), citing OCGA § 17-5-30 (b).

that had been thrown onto the sidewalk — a digital scale and a plastic sandwich baggie that contained what appeared to be cocaine.

The officer turned his attention to the Altima. He testified, "I did a search of the vehicle and located several items of interest in that vehicle[,]" listing a box containing sandwich baggies similar to the baggie he retrieved from the sidewalk and additional wadded-up baggies that contained suspected marijuana residue. The officer testified further:

> There were some items in there that I did go through, such as a leather or a leather-type coat, and in that coat I did find a receipt, or a bill. . . . The name on that receipt was Douglas Nesbitt and it did have an address here in Athens. I also found a handicap parking permit in the car that had the name Doug Nesbitt on it.

The officer recalled, "[W]hat I did at that point is check to see who the registered owner of the car was. I did have lots of paperwork indicating who . . . the registered owner was." The officer "ran the tag and had our dispatcher find a phone number of the registered owner." The officer called the number provided and spoke with a man who stated that the car was registered to him and that the "actual owner" of the car was his college-student niece. The man gave the officer his niece's telephone number. The officer next spoke with the niece who said that her boyfriend might have the car, but after talking further with a dispatcher, the niece hung up and did not answer the officer's or the dispatcher's subsequent calls to her. The officer had also learned that the niece lived within that complex, in an apartment, just on the other side of the trees behind which he had lost sight of the driver.

Using the names on the documents found inside the Altima, the officer "pulled a picture from a previous incident" and determined that the picture was of the same man who had disappeared through the trees. At the hearing, the officer identified Nesbitt as that same man.

Nesbitt moved to suppress the evidence seized after the Altima was stopped on the ground that the evidence was obtained as a result of an illegal stop. Much of the argument at the suppression hearing concerned the validity of the stop; indeed, the videotape of Nesbitt's driving just before the officer initiated the traffic stop was played several times. At the end of the hearing, the trial court agreed with Nesbitt that the traffic stop had not been supported by reasonable, articulable suspicion and thus entered an order suppressing all evidence seized after the traffic stop was initiated. The state filed a motion for reconsideration, wherein it asserted that in fleeing,

Nesbitt had abandoned any privacy interests he may have had in the items thrown to the sidewalk and those left in the car. In an opposing brief, Nesbitt argued that the motion had no merit. The trial court denied the state's motion for reconsideration.

On appeal, the state no longer contends that Nesbitt's driving maneuvers authorized the stop. Instead, asserting only the theory of abandonment, the state argues that irrespective of the legality of the stop of the vehicle, the seized evidence was not tainted as fruit of an illegal, warrantless search.

Our analysis begins with the basic rule that "[t]he Fourth Amendment proscribes all unreasonable searches and seizures, and searches conducted without prior judicial approval are per se unreasonable under the Fourth Amendment, subject to specifically established and well-delineated exceptions."[4] Among the exceptions to the warrant requirement is a search or seizure of abandoned property; one cannot manifest a reasonable expectation of privacy in an item once it has been abandoned.[5]

> Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. All relevant circumstances existing at the time of the alleged abandonment should be considered. Police pursuit or the existence of a police investigation does not of itself render abandonment involuntary. The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.[6]

"The issue of abandonment is one of fact to be resolved by the trier of fact, and the finding of fact will not be disturbed on appeal if there is any evidence to support it."[7]

1. We consider first whether the trial court was authorized to

---

[4] *Teal v. State*, 282 Ga. 319, 322-323 (647 SE2d 15) (2007) (citation omitted); see *Katz v. United States*, 389 U. S. 347, 357 (88 SC 507, 19 LE2d 576) (1967); see also *Arizona v. Gant*, ___ U. S. ___, ___ (II) (129 SC 1710, 173 LE2d 485) (2009).

[5] *Abel v. United States*, 362 U. S. 217, 241 (III) (80 SC 683, 4 LE2d 668) (1960); *Williams v. State*, 171 Ga. App. 546, 547 (2) (320 SE2d 389) (1984) ("[T]he constitutional protection of the Fourth and Fourteenth Amendments does not apply to property which has been abandoned.") (citation and punctuation omitted).

[6] *Young v. State*, 190 Ga. App. 775, 776 (380 SE2d 309) (1989) (citation and punctuation omitted).

[7] *Williams*, supra at 548 (2).

reject the state's abandonment argument with respect to evidence seized from the Altima — that is, whether, prior to the officer's search of the car, Nesbitt had relinquished any privacy interest he had in the vehicle.

(a) As an initial matter, we note that the state does not attempt to justify the search of the car as an inventory search;[8] the state does not argue that the search was valid under the "automobile exception" to the search warrant requirement;[9] nor does the state claim that any of the evidence retrieved from the car was seized pursuant to the plain view doctrine.[10] More pertinently, our focus regarding the search of the Altima is on the state's only asserted basis: in fleeing the traffic stop on foot, Nesbitt abandoned the vehicle for Fourth Amendment purposes.

(b) Without question, where the evidence showed that the driver (and passengers, if any) fled a motor vehicle illegally parked or parked in a hazardous manner, courts have treated the vehicle as abandoned for Fourth Amendment purposes. For example, in *Burgeson v. State*,[11] the appellant and her suspected cohorts led police on a high speed chase in a stolen car; after they "crashed the car into a utility pole," they fled on foot.[12] Those circumstances allowed for the determination that the appellant abandoned the stolen vehicle and her personal belongings inside.[13] Likewise, in *Skaggs-Ferrell v. State*,[14] the appellant and his suspected cohorts led officers on a high speed chase, "crashed into a parked car," then fled on foot.[15] Those circumstances allowed for the determination that the vehicle was abandoned property, thus authorizing police officers to search it.[16] In *Cooper v. State*,[17] state troopers having probable cause to arrest the appellant pursued his fleeing vehicle; the appellant drove down a public road; exited the vehicle, leaving it "actually situated in the middle of [an] intersecting side road"; then ran away on foot.[18] Those circumstances allowed for

---

[8] See generally *Colzie v. State*, 257 Ga. App. 691, 692 (2) (572 SE2d 43) (2002) ("In the interests of public safety and as part of what the Court has called 'community caretaking functions,' automobiles are frequently taken into police custody."), quoting *South Dakota v. Opperman*, 428 U. S. 364, 368 (2) (96 SC 3092, 49 LE2d 1000) (1976).

[9] See generally *State v. LeJeune*, 276 Ga. 179, 182-184 (2) (576 SE2d 888) (2003) (addressing "automobile exception" to the search warrant requirement).

[10] See generally *Moss v. State*, 275 Ga. 96, 104 (14) (561 SE2d 382) (2002) (addressing plain view doctrine).

[11] 267 Ga. 102 (475 SE2d 580) (1996).

[12] Id. at 103.

[13] Id. at 106 (3) (b).

[14] 287 Ga. App. 872 (652 SE2d 891) (2007).

[15] Id. at 873.

[16] Id. at 874 (1).

[17] 174 Ga. App. 464 (330 SE2d 402) (1985).

[18] Id. at 465.

the conclusion that the appellant abandoned his vehicle.[19] And in *Gardner v. State*,[20] appellant did not retain a legitimate expectation of privacy in his automobile, which was being followed by police because it was believed to have been used in a recent robbery. Although the car eluded the officers when it sped away, officers found the car "stopped in the street, blocking traffic, [with] the windows open and the doors unlocked."[21]

In contrast, the evidence here did not demand a finding that Nesbitt fled a car that was illegally parked or parked in some hazardous manner. And we decline to hold that flight on foot by a driver (and passengers, if any) from a vehicle recently pursued by the police automatically justifies a search of that vehicle. Such a holding would reject persuasive authority such as *Arizona v. Dean*.[22] In *Dean*, the suspect ignored a police signal to stop his Jeep and continued driving until he parked in his own driveway; he then ran into the garage of his residence, leaving the key in the ignition; the *Dean* court concluded that the suspect had not abandoned the Jeep.[23] Here, after being commanded to stop the vehicle, Nesbitt did so by parking it in a residential parking space.

We note that when Nesbitt fled on foot, he left the Altima driver's door open, as well as the car itself parked "kind of sideways," albeit within a parking space. But in *Dean*, a similar instance of a driver's failure to secure his vehicle before fleeing on foot was of no moment. There, the suspect ran away from a traffic stop, leaving the key in the vehicle's ignition.[24] Another similar circumstance was of no moment in *United States v. Scrivner*.[25] There, the court vacated a conviction that was based upon evidence seized from two leased trucks left unlocked and with the keys in the ignitions on warehouse premises leased by the trucks' leasee. "Such an act is doubtless careless and imprudent, but it scarcely suffices to support a conclusion that he has cast the vehicles aside, relinquishing his interest in them."[26]

Construed most favorably to the upholding of the trial court's judgment,[27] the facts of this case more closely resemble those of *Dean*

---

[19] Id. at 465 (1).

[20] 172 Ga. App. 677 (324 SE2d 535) (1984).

[21] Id. at 678 (2).

[22] 76 P3d 429 (II) (Ariz. 2003).

[23] Id. at 432 (II) (A) (concluding that trial court did not err in specifically finding that the Jeep, "which was parked in the driveway of [the suspect's] residence, was not abandoned").

[24] Id. at 431.

[25] 680 F2d 1099 (5th Cir. 1982).

[26] Id. at 1100-1101.

[27] See *Tate*, supra (a guiding principle for a court reviewing a suppression ruling is that evidence must be construed most favorably to the upholding of the trial court's findings and judgment).

and *Scrivner* rather than cases in which the suspects ran away from vehicles illegally parked or parked in some hazardous manner. When Nesbitt ran away, the officer had just observed him park the Altima within a parking space of an apartment complex,[28] where lived — as was readily ascertained by the officer based upon his investigation of the car's tag — the person to whom the Altima's registered owner had entrusted the vehicle. In light of this evidentiary record, we cannot conclude that the trial court clearly erred in rejecting the state's argument that Nesbitt abandoned the Altima and consequently lost any reasonable expectation of privacy with regard to the car.[29] Under applicable standards of review, we must affirm that part of the judgment suppressing evidence found inside the Altima.

2. We turn to the admissibility of the items retrieved from the sidewalk.

(a) The evidence showed that the items were thrown to the sidewalk during an apparent attempt to end the police encounter.

> According to *Terry v. Ohio*, police-citizen encounters are generally categorized into three tiers: consensual encounters; brief investigatory stops, which require reasonable articulable suspicion; and arrests that must be supported by probable cause. An investigative stop of a vehicle is included within the scope of second-tier encounters and therefore must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.[30]

Here, to investigate whether the driver was impaired, the officer initiated a traffic stop. "[A]n investigative stop of a vehicle is a second tier encounter, and the suspect does not have the right to flee from the encounter."[31]

---

[28] Cf. *Williams* at 547-548 (2) (record supported the trial court's finding of abandonment, where the vehicle at issue was discovered down a deserted field road, over 100 yards from the nearest home, on land not belonging to the appellant; the vehicle's tag and battery had been removed, and the vehicle was covered with bushes and debris).

[29] See id. at 548 (finding regarding abandonment will not be disturbed on appeal if there is any evidence to support it); see generally *Tate*, supra (a guiding principle for a court reviewing a suppression ruling is that decisions on questions of fact must be accepted unless clearly erroneous).

[30] *Reynolds v. State*, 280 Ga. App. 712, 714 (1) (634 SE2d 842) (2006) (citations, punctuation and footnote omitted), citing *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

[31] *State v. Stafford*, 288 Ga. App. 309, 315 (2) (653 SE2d 750) (2007) (footnote omitted), aff'd, *Stafford v. State*, 284 Ga. 773 (671 SE2d 484) (2008).

Regardless of the propriety of an officer's basis for the execution of a *Terry* traffic investigative stop, attempting to flee from such stop is a separate crime altogether, i.e., fleeing or attempting to elude a police officer. Such offense does not require that the investigative stop be proper. The determination of whether there is a legal basis for a *Terry* stop does not belong to the detainee, thereby giving him the right to flee if he determines he is being stopped illegally.[32]

Because the suspect (determined only later to be Nesbitt) chose to run away from the traffic stop, the officer had probable cause to arrest him for fleeing or attempting to elude a police officer and thus had a legitimate basis for his foot pursuit.[33] Voluntarily throwing the digital scale and the baggie of suspected cocaine to the sidewalk near parking spaces within the apartment complex demonstrated an abandonment of the items.[34]

(b) But our analysis does not end there. In this appeal, the state seeks a ruling that it may use the abandoned evidence in Nesbitt's prosecution. Evidence adduced at the suppression hearing, however, showed that the officer ascertained Nesbitt's identity, and thereby connected him to the abandoned evidence, based upon the items found during the search of the Altima;[35] and we have upheld the trial court's determination that the search of the Altima was unlawful.[36]

The exclusionary rule prohibits introduction into evidence of tangible material seized during an unlawful search, *testimony concerning knowledge acquired during an unlaw-*

---

[32] *Reynolds*, supra at 715 (1) (citation and punctuation omitted).

[33] See OCGA § 40-6-395 (a) (proscribing driver of vehicle from, among other things, fleeing or attempting to elude a pursuing police officer when given a visual or an audible signal to bring the vehicle to a stop); *Hardnett v. State*, 285 Ga. 470, 474-475 (6) (678 SE2d 323) (2009) (once officer signaled defendant to stop his car and defendant sped away, defendant was committing crime of fleeing or attempting to elude a police officer, and that crime provided a legitimate basis for the police pursuit of his vehicle); *Reynolds*, supra at 716 (foot flight from *Terry* traffic investigative stop provided an independent basis to arrest for fleeing or attempting to elude a police officer). Cases cited by Nesbitt are inapposite because they do not involve circumstances that escalated to a showing of probable cause to arrest. See, e.g., *Brown v. State*, 301 Ga. App. 82 (686 SE2d 793) (2009); *State v. Dukes*, 279 Ga. App. 247 (630 SE2d 847) (2006); *Peters v. State*, 242 Ga. App. 816, 817 (531 SE2d 386) (2000).

[34] See generally *Wolf v. State*, 291 Ga. App. 876, 878 (1) (663 SE2d 292) (2008) (what a person knowingly exposes to the public is not a subject of Fourth Amendment protection); *Reynolds*, supra (where defendant's flight on foot from *Terry* traffic investigative stop provided an independent basis for defendant's arrest, methamphetamine found on ground in close proximity to where defendant was apprehended was admissible); *Vines v. State*, 142 Ga. App. 616, 617 (237 SE2d 17) (1977) (sufficient evidence authorized trial court's determination that defendant, upon seeing approaching police officers, desired to abandon the heroin).

[35] The officer did not testify that the niece provided her boyfriend's name.

[36] See Division 1, supra.

YALE LAW LIBRARY

*ful search, and both tangible and testimonial derivative evidence that is the product of the primary evidence or that is otherwise acquired as an indirect result of the unlawful search,* up to the point where the taint is dissipated by its attenuated connection with the unlawful search.[37]

Because the evidence from which the officer ascertained Nesbitt's identity derived from documents found during the unlawful search of the Altima, we conclude that the trial court did not err in rejecting the state's argument that the items retrieved from the sidewalk are admissible in a trial against Nesbitt.[38]

(c) We are mindful of exceptions to the exclusionary rule.

[W]hen examining the admissibility of evidence that is fruit of the poisonous tree, the appropriate question is whether the evidence at issue has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint. Using this rationale, two functionally similar exceptions to the exclusionary rule — the independent source doctrine and the ultimate or inevitable discovery doctrine — have developed because the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse, position than they would have been in if no police error or misconduct had occurred. The independent source doctrine allows admission of evidence that was discovered by means wholly independent of any constitutional violation, while the ultimate or inevitable discovery doctrine allows admission of evidence that was discovered as a result of police error or misconduct if the State establishes by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means, without reference to the police error or misconduct.[39]

At the suppression motion hearing, the officer testified that, with respect to the items abandoned on the sidewalk, "I picked up those items and tried to maintain the outside areas where they could

---

[37] *Teal*, supra at 323 (citation omitted; emphasis supplied).

[38] See id.; *Wolf*, supra at 880 (3) ("The indirect fruits of an illegal search or arrest should be suppressed when they bear a significantly close relationship to the underlying illegality.") (punctuation and footnote omitted).

[39] *Teal*, supra at 323-324 (citations, punctuation and emphasis omitted).

be fingerprinted and processed." Subsequently, he turned over those items (along with the other seized items) to a detective who, according to the officer, "at my request, processed those items that I had recovered and informed me that they had matched; informed me that the digital scale, which had cocaine residue on it, that matched Mr. Nesbitt's fingerprints."

The state did not adduce sufficient competent evidence to support a finding of a fingerprint match nor to show how it obtained Nesbitt's fingerprints (independent of the evidence seized during the unlawful search of the Altima). Furthermore, given that the state has not argued that any such exception to the exclusionary rule applied, we will not consider whether the evidence at issue would have been thereunder admissible.

*Judgment affirmed. Miller, C. J., and Johnson, J., concur.*

DECIDED JULY 8, 2010.

*Kenneth W. Mauldin, District Attorney, James V. Chafin, Assistant District Attorney*, for appellant.
*James W. Smith*, for appellee.