A11A1640. WALKER v. THE STATE.
(722 SE2d 887)

BARNES, Presiding Judge.
  Following a bench trial, Daniel Avery Walker was convicted of felony obstruction for head-butting a law enforcement officer. The trial court denied his motion for new trial. Walker appeals, contending that the trial court erred in denying his motion to suppress and that there was insufficient evidence to convict him. For the reasons discussed below, we affirm.
  1. Walker moved to suppress all physical evidence, statements, and testimony resulting from his allegedly unlawful detention by a sheriff's deputy. "Because a motion to suppress under OCGA § 17-5-30 contemplates the suppression only of tangible physical evidence, [Walker] in effect proceeded under both a motion to suppress and a motion in limine." *Hamrick v. State*, 198 Ga. App. 124 (1) (401 SE2d 25) (1990). On appeal from a trial court's ruling on a motion to suppress or motion in limine, we may consider all relevant and admissible evidence of record introduced at the motion hearing or during trial. See *State v. Brodie*, 216 Ga. App. 198, 199 (1) (c) (453 SE2d 786) (1995).
  While a trial court's findings as to disputed facts will be reviewed to determine whether the ruling was clearly erroneous, "where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review." (Citation omitted.) *Johnson v. State*, 305 Ga. App. 635, 636 (700 SE2d 612) (2010). Furthermore, even if the trial court's asserted ground for denying a motion to suppress or motion in limine is erroneous, we will affirm the ruling if it is "right for any reason." See *Jones v. State*, 282 Ga. 784, 789 (1) (c) (653 SE2d 456) (2007); *Walker v. State*, 277 Ga. App. 485, 489 (3) (627 SE2d 54) (2006); *Gaston v. State*, 257 Ga. App. 480, 483-484 (2) (571 SE2d 477) (2002).
  The record shows that on September 3, 2009, a sheriff's deputy

received a phone call from a staff member at an apartment complex in Hall County.[1] The staff member informed the deputy that the complex manager had received a complaint that a "male subject" had been involved in a "domestic disturbance" the previous night with the female resident of apartment 301 and that it had gotten "pretty ugly." The male subject was not on the lease to apartment 301 but was currently there with the female resident. The staff member requested that the deputy accompany him to apartment 301, issue a written criminal trespass warning to the male subject,[2] and ask the male subject to leave the premises.

Upon arriving at the complex, the deputy accompanied the staff member to apartment 301. Although the deputy was dressed in civilian clothes, he was wearing his badge and gun in plain view and was carrying a clipboard with the criminal trespass warning attached to it. The staff member knocked on the door to the apartment. When the female resident came to the door, the staff member introduced himself, identified the deputy as a law enforcement officer, and explained why they were there. The female resident at that point went back inside the apartment and woke up Walker, who came to the door. The staff member then explained to Walker that they were there regarding the domestic incident that had occurred the previous night, that the deputy was going to issue him a criminal trespass warning, and that he would need to leave the apartment complex. The deputy asked Walker for his identification so that he could fill out the criminal trespass warning.

Walker became "very upset." He patted the outside of his pants as if looking for his identification but then went back inside the apartment. When he came back to the door, Walker without any provocation approached the deputy, raised his middle finger in the deputy's face, told the deputy he was leaving, and said "F___k you. I'm not going to give you my ID. It's my right." As Walker attempted

---

[1] The deputy also served as the "courtesy officer" for the complex.

[2] The purpose of the criminal trespass warning was to meet the notice requirement found in OCGA § 16-7-21 (b) (2) if the male subject at some point reentered the apartment complex after being asked to leave from the premises. That statutory subsection provides in relevant part:

> . . .
> (b) A person commits the offense of criminal trespass when he or she knowingly and without authority:
> . . .
> (2) Enters upon the land or premises of another person . . . after receiving, prior to such entry, notice from the owner, rightful occupant, or, upon proper identification, an authorized representative of the owner or rightful occupant that such entry is forbidden[.]

While the criminal trespass statute does not require that the notice be given in writing, see, e.g., *Wingfield v. State*, 191 Ga. App. 800 (383 SE2d 180) (1989), it was the practice of the apartment complex to use a written notice form supplied by the county and to maintain copies of the signed forms for its records.

to "squeeze between the [deputy] and the doorjamb to get by the [deputy] to leave," the deputy held onto Walker's arm, asked again for his identification, and told him to calm down.

When the deputy took hold of his arm, Walker aggressively "latched" onto the deputy and began fighting with him, to the point that the deputy and Walker ended up on the ground "scuffling" with one another. The staff member from the apartment complex also attempted to assist the deputy in subduing Walker. Walker "was very upset, screaming, cussing, [and] making threats" that could be heard from outside the apartment building. The deputy told Walker that if he calmed down, he would let him up from the ground. Walker promised to calm down, and the deputy and staff member let him up.

Walker started walking to his car as he continued to curse at the deputy, who was following Walker and asking for his identification. When Walker got into his car and started the ignition, the deputy came over and placed one hand on the car door and one hand on the roof of the car so that Walker could not shut the door. The deputy told Walker that he still needed to see his identification. Walker responded by jumping out of the car and head-butting the deputy in the left eye. The deputy and Walker went to the ground and fought until the deputy and staff member from the apartment complex were able to get hold of Walker's arms. Ultimately, the deputy was able to subdue and handcuff him.

Walker was charged with felony obstruction of an officer for head-butting the deputy. He filed a motion to suppress all evidence arising from when the sheriff's deputy first took hold of his arm as he attempted to squeeze by the deputy in the doorway and leave the apartment. According to Walker, the deputy unconstitutionally detained him at that point in their encounter, tainting all evidence gathered from that point onward. Because there was no physical evidence relied upon by the State to support the obstruction charge, Walker essentially sought to exclude all testimony about his conduct after his allegedly illegal detention began.

The trial court denied the motion, finding that the deputy's temporary detention of Walker by holding onto his arm was supported by reasonable suspicion of criminal activity in light of the information communicated to the deputy that Walker had been involved in a domestic disturbance the previous night and could be located in a specific apartment. After the denial of his motion to suppress, Walker was convicted of felony obstruction in a bench trial. The trial court denied his motion for new trial, and this appeal followed.

United States Supreme Court holdings sculpt out, at least theoretically, three tiers of police-citizen encounters:

> (1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause.

(Citations and punctuation omitted.) *Peters v. State*, 242 Ga. App. 816, 816-817 (1) (531 SE2d 386) (2000). "A police-citizen encounter remains consensual and does not implicate the Fourth Amendment so long as a reasonable person would feel free to disregard the police and go about his business." (Citation and punctuation omitted.) *Johnson v. State*, 299 Ga. App. 474, 476 (682 SE2d 601) (2009). But once a reasonable person no longer believes that he is free to leave, the encounter becomes a second-tier detention requiring a showing of reasonable suspicion. Id. To meet the reasonable suspicion standard, the police must have, under the totality of the circumstances, "a particularized and objective basis for suspecting the person is involved in criminal activity." (Citation and punctuation omitted.) *Brown v. State*, 301 Ga. App. 82, 84-85 (686 SE2d 793) (2009).

Walker contends that when the deputy first held onto his arm to prevent him from leaving the apartment, their encounter escalated to a second-tier detention requiring a showing of reasonable suspicion of criminal activity. Among other things, Walker argues that there was no showing of reasonable suspicion because the deputy only had a generalized suspicion that he had previously been involved in a "domestic disturbance" without any knowledge that it was criminal in nature rather than simply a heated verbal argument. See, e.g., *Gattison v. State*, 309 Ga. App. 382, 384-385 (711 SE2d 25) (2011) (heated verbal discussion insufficient to create reasonable suspicion of criminal activity). Walker also points out that the fact that the deputy wanted to complete the criminal trespass notice form and give it to him before he left the apartment complex did not provide an independent basis for temporarily detaining him, given that the criminal trespass statute, OCGA § 16-7-21 (b) (2), does not require that notice be provided in writing.

We agree with Walker that his encounter with the deputy escalated to a second-tier detention when the deputy held onto his arm in an attempt to prevent him from leaving the apartment before showing his identification.[3] See *White v. State*, 267 Ga. App. 200, 202

---

[3] The deputy was entitled to approach the apartment, knock on the door, speak with the occupants at the doorway, and request identification even if he did not have reasonable suspicion at that point, given that these actions did not go beyond a first-tier consensual encounter. See *Galindo-Eriza v. State*, 306 Ga. App. 19, 22 (1) (701 SE2d 516) (2010) (officer's attempt to conduct "knock and talk" at residence constituted permissible first-tier encounter);

(2) (598 SE2d 904) (2004); *State v. Taylor*, 226 Ga. App. 690, 691 (487 SE2d 454) (1997). It also may well be that, in light of the record before us, the deputy did not have sufficient particularized information communicated to him regarding the prior "domestic disturbance" involving Walker to create reasonable suspicion.[4] Nevertheless, pretermitting whether Walker's initial detention by the deputy was unlawful, we conclude that testimony about Walker's conduct after that allegedly illegal detention was not "fruit of the poisonous tree."

When examining whether evidence is inadmissible as fruit of an illegal detention, we ask whether the evidence was obtained "by exploitation of [the prior] illegality or instead by means sufficiently distinguishable to be purged of the primary taint." (Punctuation omitted.) *State v. Nesbitt*, 305 Ga. App. 28, 36 (2) (c) (699 SE2d 368) (2010). And, significantly, a defendant's commission of a new crime in the presence of law enforcement is an intervening act of free will that purges the taint of any prior illegality. See *Lawson v. State*, 299 Ga. App. 865, 869 (1) (684 SE2d 1) (2009); *Reynolds v. State*, 280 Ga. App. 712, 715-716 (1) (634 SE2d 842) (2006); *Faulkner v. State*, 277 Ga. App. 702, 705 (1) (627 SE2d 423) (2006); *State v. Stilley*, 261 Ga. App. 868, 870-871 (584 SE2d 9) (2003).

Walker's violent reaction in response to the deputy merely taking hold of his arm at the doorway of the apartment constituted an intervening act that purged the taint of any illegal detention. While an individual is entitled to resist an unlawful arrest or detention, the individual is justified in using only such force as is necessary to prevent the arrest or detention, "i.e., force proportionate to the force being used in the unlawful detention." (Citation and punctuation omitted.) *Sosebee v. State*, 169 Ga. App. 370 (1) (312 SE2d 853) (1983). See *Dudley v. State*, 264 Ga. App. 845, 846 (1) (b) (592 SE2d 489) (2003); *Allen v. State*, 237 Ga. App. 744, 745 (2) (516 SE2d 788) (1999); *Brooks v. State*, 144 Ga. App. 97, 100 (4) (240 SE2d 593) (1977).

The uncontroverted record shows that in response to the deputy simply holding onto his arm at the doorway of the apartment, Walker aggressively "latched" onto the deputy and began fighting him, to

---

*State v. Ealum*, 283 Ga. App. 799, 801, n. 2 (643 SE2d 262) (2007) (officers were legally entitled to approach home and speak with occupant at front steps, given that the officers "were merely taking the same route as would any guest or other caller") (citation and punctuation omitted); *Pickens v. State*, 225 Ga. App. 792, 793-794 (1) (a) (484 SE2d 731) (1997) (police officer did not need articulable suspicion to knock on hotel room door and ask occupant for identification).

[4] At the bench trial, the apartment complex manager gave a more detailed description of the domestic incident, but there is nothing in the record reflecting that the other staff member who called the deputy and requested his assistance ever communicated this more detailed information to the deputy.

the point that the deputy and Walker ended up on the ground "scuffling" with one another, and the staff member from the apartment complex had to come to the assistance of the deputy. During the violent encounter, Walker "was very upset, screaming, cussing, [and] making threats" that could be heard from outside the apartment building.

Construed in favor of upholding the trial court's ruling, Walker's aggressive conduct toward the deputy was an unreasonable and disproportionate response to the allegedly unlawful detention, and thus constituted an intervening act that purged the taint flowing from any prior illegality. See *O'Neal v. State*, 311 Ga. App. 102, 103-104 (1) (714 SE2d 744) (2011) (even if pat-down was unlawful, defendant unreasonably resisted when he "aggressively grabbed" the officer's arm, and so motion to suppress was properly denied); *Lawson*, 299 Ga. App. at 869 (1) (defendant's unprovoked attack of officer who was standing at his door and asking for his identification constituted intervening act). See also *Meadows v. State*, 303 Ga. App. 40, 43 (1) (692 SE2d 708) (2010) (defendant's elbowing of officer during pat-down was unreasonable resistance, even if detention and pat-down were unlawful); *Dudley*, 264 Ga. App. at 846 (1) (b) (defendant's resistance to detention was unreasonable and dispro- portionate, where he jerked away and punched officer when the officer grabbed his left hand). It follows that the trial court did not err in admitting into evidence the officer's testimony about Walker's conduct after his allegedly unlawful detention at the doorway of the apartment, and, therefore, did not err in denying Walker's motion to suppress.

2. Walker also contends that the evidence was insufficient to support his conviction for felony obstruction of an officer under OCGA § 16-10-24 (b). In this regard, Walker argues that his head-butting of the deputy, who prevented him from closing the door of his car and driving away, did not constitute obstruction because an individual cannot be convicted of that offense unless the officer is engaged in the lawful discharge of his official duties, see *Green v. State*, 240 Ga. App. 774, 775 (1) (525 SE2d 154) (1999), and an officer is not discharging his lawful duty when he detains an individual "without specific, articulable facts sufficient to give rise to a reason- able suspicion of criminal conduct." (Footnote omitted.) *Davis v. State*, 308 Ga. App. 7, 12 (1) (c) (i) (706 SE2d 710) (2011).

We are unpersuaded. Once Walker used unreasonable and dis- proportionate force in responding to the officer holding onto his arm at the doorway of the apartment, the deputy was legally entitled to detain him. See *Lawson*, 299 Ga. App. at 869 (1) & n. 12. It is true that the deputy did not testify that his subjective reason for following Walker out to his car and preventing him from driving away from the

apartment complex was because of Walker's aggressive conduct toward him.

> Nevertheless, when analyzing whether a person has been unconstitutionally seized, we are not bound by the detaining officer's subjective belief. Rather, the touchstone of any Fourth Amendment analysis is a determination of whether an officer's conduct is reasonable based upon all of the objective facts. The circumstances presented here illustrate that the [deputy]'s conduct was neither arbitrary nor harassing, but was reasonable in light of the objective facts available to him.

(Citations and punctuation omitted.) *Johnson*, 299 Ga. App. at 478. See *Oglesby v. State*, 311 Ga. App. 615, 617-618 (716 SE2d 742) (2011). Accordingly, the record supported a finding by the trial court in the bench trial that the deputy was engaged in the lawful discharge of his official duties when Walker head-butted him.[5] We conclude that a rational trier of fact was authorized to find Walker guilty beyond a reasonable doubt of felony obstruction of an officer. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Adams and Blackwell, JJ., concur.*

DECIDED FEBRUARY 9, 2012.

*Adam S. Levin, H. Bradford Morris, Jr.*, for appellant.
*Lee Darragh, District Attorney, Shiv Sachdeva, Assistant District Attorney*, for appellee.

---

[5] The deputy was performing official duties even if he also served as the "courtesy officer" of the apartment complex. See, e.g., *Duncan v. State*, 163 Ga. App. 148, 148-149 (1) (294 SE2d 365) (1982).