**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**May 27, 2016**

# In the Court of Appeals of Georgia

A16A0269. CASH v. THE STATE.

PHIPPS, Presiding Judge.

After a bench trial, Joshua William Cash was convicted of driving under the influence of alcohol. He appeals, challenging the sufficiency of the evidence. He also argues that the trial court erred in denying his motion to suppress. For reasons that follow, we reverse and remand for further proceedings.

1. In reviewing Cash's sufficiency challenge, we construe the evidence in the light most favorable to the verdict, and Cash no longer enjoys a presumption of innocence.[1] We neither weigh the evidence nor assess witness credibility, but merely

---

[1] *Peters v. State*, 281 Ga. App. 385 (1) (636 SE2d 97) (2006).

determine whether the trial court was authorized to find Cash guilty beyond a reasonable doubt.[2]

So viewed, the evidence shows that on the night of October 12, 2014, a deputy with the Forsyth County Sheriff's Office observed a car stopped on the shoulder of State Route 400. The vehicle appeared to be occupied, and the deputy became concerned that the occupants might need assistance. He activated his patrol car's blue lights, pulled behind the vehicle, and approached it. Inside, the deputy found Cash in the driver's seat and one passenger. Cash told the deputy that they had stopped on the side of the road to figure out where they were going that night.

As the deputy spoke to Cash, he smelled a strong odor of alcoholic beverage coming from the vehicle. He also noticed that Cash's eyes were glassy, bloodshot, and watery, manifestations consistent with alcohol consumption. He asked whether Cash had consumed any alcohol, and Cash admitted to drinking two beers several hours earlier. At the deputy's request, Cash stepped out of the vehicle. Cash was unsteady on his feet, and the deputy detected an odor of alcohol on his person. The deputy performed the horizontal gaze nystagmus field sobriety test on Cash, who exhibited six out of six clues, indicating impairment. He asked Cash to participate in

---

[2] Id.; *Duren v. State*, 252 Ga. App. 257, 258 (555 SE2d 913) (2001).

several other field sobriety evaluations, but Cash declined, requesting instead to take a breathalyzer test at the police station.

Based on the odor of alcohol about Cash's person, his physical manifestations, and his performance on the horizontal gaze nystagmus test, the deputy determined that Cash was under the influence of alcohol to the extent he was less safe to drive and placed him under arrest. The deputy then read Cash Georgia's Implied Consent Warning. Cash agreed to submit to a State-administered breath test on the Intoxilyzer 5000, which the deputy conducted at the county detention center. Although the deputy identified a copy of the breath test results at trial, the State never tendered the results into evidence, and they were not admitted.

At the conclusion of the evidence, the trial court found Cash guilty of driving with a blood alcohol concentration of 0.08 grams or more (a per se violation) and driving under the influence of alcohol to the extent he was less safe to drive (a less safe violation). After merging the two counts for purposes of sentencing, the trial court convicted Cash of driving under the influence (per se). Cash now appeals, arguing that his conviction cannot stand because the State did not tender the breath test results into evidence.

3

(a) Count 1 of the accusation alleged that Cash committed a per se DUI violation by driving "while his breath alcohol concentration was .08 grams or more within 3 hours after such driving ended, due to alcohol consumed before such driving ended."[3] Given its failure to tender the Intoxilyzer 5000 test results into evidence, the State admits – and we find – that it presented insufficient proof of this charge. Accordingly, Cash's conviction for driving under the influence must be reversed,[4] and Cash cannot be retried on Count 1.[5]

(b) The State's mishandling of the breath test results also undermines the trial court's finding of guilt as to Count 2 of the accusation, which charged Cash with the less safe violation. We first note that the evidence with respect to this charge was

[3] See OCGA § 40-6-391 (a) (5).

[4] See *Epps v. State*, 298 Ga. App. 607, 609 (1) (680 SE2d 636) (2009) ("In the absence of the blood test results, there is no competent evidence that [the defendant] had 'an alcohol concentration of 0.08 grams or more at a time within three hours after driving and being in actual physical control of a moving vehicle, said alcohol having been consumed prior to such driving,' as charged in the accusation.") (footnote omitted); *Peters*, supra at 386 (1) (reversing per se conviction where State failed to offer evidence that defendant's "blood alcohol level exceeded the legal limit within three hours of when he last had control of a moving vehicle").

[5] See *State v. Caffee*, 291 Ga. 31, 34 (3) (728 SE2d 171) (2012) ("The Double Jeopardy Clause precludes a second trial after a reviewing court determines that the evidence introduced at trial was insufficient to sustain the verdict.").

sufficient. Testimony regarding Cash's location that night, appearance, smell, unsteadiness on his feet, admitted consumption of alcohol, and performance on the horizontal gaze nystagmus test supported the trial court's determination that Cash had driven his vehicle while under the influence of alcohol to the extent he was less safe to drive.[6] The record further shows, however, that the Intoxilyzer 5000 test results were given to the trial court to review with the other exhibits, even though the test results were never tendered or admitted into evidence. Those results indicated that Cash provided two breath samples, which registered alcohol concentrations of 0.114 and 0.117 grams.

The State concedes that the test results were considered by the trial court in reaching its verdict, inappropriately and harmfully contributing to the finding of guilt

---

[6] See *Richardson v. State*, 299 Ga. App. 365, 366-367 (1) (682 SE2d 684) (2009) (conviction for driving under the influence of drugs (less safe) supported by evidence that, following traffic stop, defendant's car smelled of marijuana, defendant had watery, bloodshot eyes and slurred speech, he had difficulty performing several field sobriety tests, and he admitted to consuming marijuana earlier that day); *Duren*, supra at 259 ("The results of field sobriety tests, in conjunction with other factors including the physical appearance of the driver, red or glassy eyes, an unsteady stance, the presence of the odor of alcohol, the existence of an accident, and any inculpatory statements made by the driver or witnesses may form an appropriate basis for an evaluation by an officer, and ultimately a jury, as to whether a driver was impaired by alcohol to the extent that it was less safe for him to drive.") (citation and punctuation omitted).

on Count 2.[7] We agree. Although the properly admitted evidence was sufficient to support the less safe finding, the evidence was not overwhelming, particularly since the deputy did not encounter Cash until after Cash had stopped his vehicle on the side of the road. The breath test results, on the other hand, showed that Cash had an alcohol concentration well above the legal limit following his arrest. Under these circumstances, we find it highly probable that the test results, which were never admitted into evidence, influenced the verdict. Cash, therefore, is entitled to a new trial on Count 2 (less safe).[8]

---

[7] See *Bravo v. State*, 304 Ga. App. 243, 249-250 (2) (696 SE2d 79) (2010) (reversing DUI (less safe) conviction after trial court improperly admitted evidence of defendant's blood-alcohol concentration because it was highly probable that the erroneously admitted evidence contributed to the verdict and thus was not harmless).

[8] See *Lindsey v. State*, 282 Ga. 447, 450 (2) (651 SE2d 66) (2007) (reversing conviction and remanding for new trial where error in admitting evidence was not harmless); *Bravo*, supra at 250 (2) & (3) (reversing DUI (less safe) conviction following erroneous admission of evidence and noting that retrial will occur). See also *Caffee*, supra (double jeopardy "does not preclude the State from retrying a criminal defendant whose conviction is set aside due to trial error, such as the incorrect admission of evidence"); *Shah v. State*, 288 Ga. App. 788, 789 (655 SE2d 347) (2007) (following trial error, state authorized to retry defendant on DUI (less safe) charge, but not on DUI (per se) charge because it failed to present sufficient evidence of a per se violation during the original trial).

2. Cash also claims that the trial court erred in denying his motion to suppress. Because this issue likely would be raised during any retrial of the less safe charge, we address it here.

In his motion to suppress, Cash argued that by pulling behind his car with blue lights flashing, the deputy improperly stopped and detained him without any articulable suspicion that he was engaged in criminal activity. The trial court denied the motion, concluding that the deputy's initial approach of Cash's vehicle was a first-tier police-citizen encounter that did not require suspicion of criminal activity. We find no error.

The deputy testified at the suppression hearing that he saw Cash's occupied car on the side of the roadway at approximately 1:30 a.m. Concerned that the occupants needed help, he pulled behind the vehicle to check on them. He activated his blue lights for safety so that the occupants would know he was a law enforcement officer, rather than "just another person coming up behind [them]," and to alert other Georgia 400 drivers of their presence on the side of the road. He admittedly had no reason to believe Cash had violated the law when he pulled behind the car. And he testified that Cash "was free to go at that time." According to the deputy, "all I was doing . . . was trying to see if [Cash] needed help."

The deputy approached the driver's side of the car and asked whether "everything was all right." At that point, he immediately smelled alcohol and noticed Cash's watery, bloodshot eyes. He then commenced a DUI investigation.

Georgia recognizes three distinct tiers of police-citizen encounters: "verbal communications which involve no coercion or detention; brief stops or seizures which must be accompanied by a reasonable suspicion; and arrests which can only be supported by probable cause."[9] In a first-tier encounter, a police officer may approach an individual, "ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officer does not detain the citizen or create the impression that the citizen may not leave."[10] Generally, "an officer's approach of a stopped vehicle and inquiry as to what is going on constitutes a first-tier communication, rather than a stop or seizure requiring reasonable suspicion."[11]

---

[9] *Hutto v. State*, 259 Ga. App. 238, 239 (576 SE2d 616) (2003) (punctuation and footnote omitted).

[10] Id. (punctuation and footnote omitted).

[11] Id. (punctuation and footnote omitted).

8

The trial court properly found that the deputy's initial approach of Cash's vehicle fell within the first tier of police-citizen encounters. The vehicle was already stopped when the deputy came upon it. Although the deputy activated his blue lights, "given the late hour, the hazard presented by vehicles parked on the side of a dark highway, and [the officer's] offer of assistance, this fact did not create the impression that [Cash] could not leave."[12] Nothing prevented Cash from departing, and the deputy testified that he was free to go.

Simply put, the deputy did not need suspicion of criminal activity to approach the vehicle.[13] Moreover, once he smelled alcohol in the car and observed Cash's appearance, he had "reasonable grounds to conduct an investigative inquiry to determine whether [Cash] was engaged in criminal activity, e.g., driving under the influence."[14] The trial court, therefore, properly denied Cash's motion to suppress.[15]

---

[12] Id. (footnote omitted).

[13] See id. at 239-240 (officer engaged in first-tier encounter with motorcyclist when he pulled behind motorcycle stopped on side of highway at night, activated blue lights, and approached to determine whether motorcyclist needed assistance). See also *Darwicki v. State*, 291 Ga. App. 239, 240 (1) (661 SE2d 859) (2008) (physical precedent only) ("[F]irst-tier encounter was not turned into a second-tier seizure simply because the deputy activated his blue lights.").

[14] *McClain v. State*, 226 Ga. App. 714, 718 (1) (487 SE2d 471) (1997) (citation and punctuation omitted). See also *State v. Criswell*, 327 Ga. App. 377, 383 (3) (759

9

*Judgment reversed and case remanded. Dillard and Peterson, JJ., concur.*



SE2d 255) (2014) (officer who approached defendant as part of first-tier encounter, but detected an odor of alcohol about defendant's person and noticed his bloodshot eyes, "had the required articulable suspicion" to investigate whether defendant had been driving under the influence); *Hutto*, supra at 240 (defendant's bloodshot, watery eyes and the smell of alcohol on his breath gave officer sufficient grounds to briefly detain defendant to investigate whether he was engaged in criminal activity).

[15] See *Hutto*, supra.