**FIRST DIVISION**
**BARNES, P. J.,**
**MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**January 7, 2020**

# In the Court of Appeals of Georgia

A19A2095. IN THE INTEREST OF C.B., A CHILD.

BARNES, Presiding Judge.

The State appeals from the trial court's grant of C.B.'s motion to suppress. The juvenile court found that the police officer's investigatory stop of C.B. was not supported by reasonable suspicion. The State argues that the totality of the circumstances, including the smell of marijuana, provided sufficient reasonable suspicion to justify an investigative stop. For the reasons set forth below, we affirm.

"On appeal from a ruling on a motion to suppress, we defer to the trial court's factual findings and credibility determinations, but review de novo the court's application of the law to the undisputed facts." *In Interest of K.H.*, 338 Ga. App. 486, 486 (790 SE2d 279) (2016) (punctuation omitted).

The record reflects that at about 10:00 p.m., while driving on Highway 19 in Glenwood, Georgia, a police officer saw a person, C.B., wearing a backpack and walking on the side of the road. The officer knew that there had been numerous break-ins within the last two weeks in Glenwood, close to where C.B. was walking. The officer thought it was suspicious to be walking down the street with a backpack at night in an area where break-ins had recently occurred, so he put on his car's blue lights and pulled over in front C.B. to ask C.B.'s name. After the officer got out of the car, he immediately smelled alcohol on C.B.'s breath and then smelled the "odor of marijuana on him." When asked, C.B. would not give the officer his name. The officer told C.B. to stay in front of his vehicle until he could get a patrol vehicle there, but C.B. quickly left the scene. The officer followed C.B. in his car, and C.B. eventually came back towards the car. When the officer attempted to put C.B. in handcuffs, C.B. pushed back against the officer. C.B. was eventually placed in handcuffs with the help of other officers who had arrived at the scene. When the officers searched C.B.'s backpack, they found a grinder that contained marijuana residue and a bottle of alcohol.

C.B. was charged with four counts of obstruction of an officer, possession of less than an ounce of marijuana, possession and use of drug related objects, and

underage possession of alcohol. C.B. denied the allegations and moved to suppress the evidence obtained from the encounter with the police officer. C.B. argued that the officer did not have reasonable articulable suspicion that he was engaged in illegal activities to justify stopping him. The juvenile court granted the motion to suppress, concluding that the State did not provide a reasonable articulable suspicion for detaining C.B. or probable cause for arresting C.B. As part of its order, the court determined that because the officer had not established that he was qualified or trained to detect the odor of marijuana, his "detection of an odor he believed to be marijuana fails to provide the reasonable suspicion to justify the tier-two detention of [C.B.]." The State now appeals.

In its single enumeration of error, the State argues that the juvenile court erred in granting C.B.'s motion to suppress because the totality of the circumstances provided sufficient reasonable suspicion to justify an investigative stop. We disagree.

"Supreme Court holdings sculpt out . . . three tiers of police-citizen encounters: (1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause." *In the Interest of S.B.*, 207 Ga. App. 60, 61 (427 SE2d

3

52) (1993) (punctuation omitted). "In a first-tier encounter, a police officer may approach an individual, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officer does not detain the citizen or create the impression that the citizen may not leave." *Cash v. State*, 337 Ga. App. 511, 514 (2) (786 SE2d 560) (2016) (punctuation omitted). "[O]nce a reasonable person no longer believes that he is free to leave, the encounter becomes a second-tier detention requiring a showing of reasonable suspicion." *Walker v. State*, 314 Ga. App. 67, 70 (1) (722 SE2d 887) (2012). "To meet the reasonable suspicion standard, the police must have, under the totality of the circumstances, a particularized and objective basis for suspecting the person is involved in criminal activity." Id. (punctuation omitted).

We agree with the juvenile court that the officer's initial interaction with C.B. was a first-tier encounter. The officer pulled over to the side of the road to ask C.B. for his name because of recent break-ins in the area. Even though the officer pulled in front of C.B., there was still room for C.B. to walk past the car. "[G]iven the late hour [and] the hazard presented by vehicles parked on the side of a dark highway," the use of the officer's blue lights as he pulled over to the side of the road did not

4

necessarily raise the level of interaction, as a reasonable person would still feel free to continue walking away from the officer. See *Cash*, 337 Ga. App. at 514-515 (2).

Once the officer told C.B. to stay in front of the car, however, C.B. was no longer free to leave the scene and the interaction escalated to a second-tier encounter. . See *Walker*, 314 Ga. App. at 70 (1). In order to briefly detain C.B., the officer was required to have a particularized and objective basis for suspecting that C.B. was involved in criminal activity. See id. The State argues that the officer had reasonable suspicion based on the totality of the circumstances, including the location, the time of night, C.B.'s refusal to identify himself, and the odor of alcohol and marijuana. The State specifically contends that the juvenile court erred in its determination that the State was required to provide evidence of the officer's training and experience in marijuana odor detection to establish reasonable suspicion.

We look first at whether the officer's detection of the odor of marijuana on C.B. can establish reasonable suspicion. We have determined that an officer's detection of marijuana odor may provide probable cause, if the officer shows that he has been trained and has experience in detection of illegal drugs. *State v. Folk*, 238 Ga. App. 206, 209 (521 SE2d 194) (1999) ("a trained police officer's perception of the odor of burning marijuana, provided his ability to identify that odor is placed into

5

evidence, constitutes sufficient probable cause to support the warrantless search of a vehicle"). See also *State v. Kazmierczak*, 331 Ga. App. 817, 822 (771 SE2d 473) (2015) (to determine whether probable cause exists to issue a search warrant, magistrate judge could consider whether "the officer was qualified to recognize the odor based on his or her training and experience"); *State v. Alford*, 347 Ga. App. 208, 216 (3) (818 SE2d 668) (2018) (similar).

We have also held that an officer's detection of the odor of marijuana may establish reasonable suspicion. *Cole v. State*, 254 Ga. App. 424, 425 (2) (562 SE2d 720) (2002) (citations omitted) ("the smell of marijuana coming from the interior of [a] car was sufficient to create a reasonable suspicion that [a defendant] had marijuana in the car [, and at] a minimum, this suspicion justified the officer's detention to investigate the possible criminal activity."). But, in cases where we have determined that an officer's detection of the odor of marijuana established reasonable suspicion, lack of evidence of the officer's training and experience was not raised as an issue on appeal. Consequently, our opinions in those cases do not specifically identify whether evidence of the officer's training and experience of marijuana odor detection had been placed into evidence. See e.g., *Allen v. State*, 348 Ga. App. 595, 598 (1) (a) (824 SE2d 50) (2019) (an "officer obtained reasonable suspicion of

6

criminal conduct when he detected the odor of marijuana”); *Myers v. State*, 333 Ga. App. 755, 758 (777 SE2d 44) (2015) (“The detection of the odor of marijuana provided the officer with reasonable articulable suspicion to briefly detain [the occupants].”).

Here, however, the question is squarely before us: must an officer testify as to his training and experience in marijuana odor detection for his observance of the smell of marijuana to constitute reasonable suspicion? We agree with the trial court that the lack of evidence of the officer’s training and experience is fatal. Without such evidence, we cannot determine whether the officer was acting on a subjective hunch of what marijuana may smell like or an objective deduction founded on his previous training and experience. See *Taylor v. State*, 342 Ga. App. 814, 816 (805 SE2d 131) (2017) (“Although [reasonable] suspicion need not meet the higher standard of probable cause, it must be more than a mere caprice or a hunch.”); *Culpepper v. State*, 312 Ga. App. 115, 119 (717 SE2d 698) (2011) (“when courts are considering the reasonableness of an investigative detention, they properly defer to reasonable inferences and deductions drawn by officers *in light of their experience and training*”) (emphasis added); *Walker*, 314 Ga. App. at 73 (2) (“when analyzing whether a person has been unconstitutionally seized, we are not bound by the

7

detaining officer's subjective belief."). Thus, without a foundation for the officer's ability to detect the odor of marijuana, his testimony regarding the odor of marijuana does not support a reasonable suspicion of illegal activity.

Further, the other facts identified by the State do not support a reasonable suspicion of illegal activity. None of C.B.'s described activities—walking on the side of the road at night, being present in a high-crime area, wearing a backpack, and smelling of alcohol—are a crime in and of themselves, "nor are they enough to make an objective determination that [C.B.] was about to be engaged in criminal activity." *Ewumi v. State*, 315 Ga. App. 656, 661 (1) (727 SE2d 257) (2012) (punctuation omitted) ("[i]t is well established that mere presence in an area of suspected crime is not enough to support a reasonable, particularized suspicion that the person is committing a crime."). And, the mere refusal to identify oneself to an officer in a tier-one encounter is not a crime and cannot establish reasonable suspicion of crime. Id.; see also *State v. Jones*, 303 Ga. App. 337, 340 (693 SE2d 583) (2010) (a decision to exercise the right to avoid a police officer "can hardly give rise to a reasonable suspicion of criminal activity; otherwise, a citizen could never exercise his right to avoid an officer without that officer then claiming that the exercise of that right gave the officer a reasonable suspicion of criminal activity.").

8

Finally, the officer's detection of the smell of alcohol on C.B.'s breath does not establish reasonable suspicion of criminal activity. The officer watched C.B. walking and interacted with him but did not testify that C.B. acted intoxicated or that he was obviously underage. See generally *Baird v. State*, 260 Ga. App. 661, 663 (1) (580 SE2d 650) (2003) ("Because individual responses to alcohol vary, the presence of alcohol in a defendant's body, by itself, does not support an inference that the defendant was an impaired driver.") (emphasis omitted). Drinking alcohol and smelling of alcohol, in and of itself, does not establish reasonable suspicion of a crime.

Therefore, looking at the totality of the circumstances, the State failed to provide a particularized and objective basis for suspecting that C.B. was involved in criminal activity at the moment that the officer told C.B. to stay in front of the car. The juvenile court correctly granted the motion to suppress.

*Judgment affirmed. Mercier and Brown, JJ., concur*.

9